M. D. ARNOLD *et al. v.* MAYOR AND ALDERMEN OF
KNOXVILLE.*

*(Knoxville.   September Term, 1905.)*

1.   **TAXATION.**  Injunction by taxpayers against special assessments for local improvements under unconstitutional statute.

Injunction is the proper remedy for taxpayers and owners of real estate affected by an unconstitutional statute and city ordinances passed thereunder establishing improvement districts to enjoin proceedings to make special assessments for local improvements therein.  (*Post, pp.* 198, 201.)

Case cited and approved: Norwood v. Baker, 172 U. S., 292.

2.   **SAME.   CONSTITUTIONAL LAW.**  Statute authorizing improvement districts in a city, and special assessments to pay for the local improvements, is constitutional.

A statute (Acts 1905, ch. 278) providing for the creation of improvement districts by a municipal corporation within the corporate limits, and providing for special assessments on the property lying therein, abutting thereon, or adjacent thereto, to pay for the improvements, is valid and constitutional, because the special assessments for local purposes so authorized are not taxes within the sense of the constitution (art. 2, sec. 28) requiring all property to be taxed according to value, equally and uniformly throughout the State, and (art. 2, sec. 29) empowering the legislature to authorize the several counties and incorporated towns to impose taxes, for their respec-

*As to necessity of special benefits to sustain special assessments for public improvements, see note to Re Bonds of Madera Irrigation District (Cal.), 14 L. R. A., 755.

*As to constitutionality of frontage rule of assessment, see note to Raleigh v. Peace (N. C.), 17 L. R. A., 330; also note to Davis v. Litchfield (Ill.), 21 L. R. A., 563.

Arnold v. Knoxville.

tive purposes,- and according to value, upon the principles established in regard to State taxation; and such an improvement district within the corporate limits, and less than the whole city and embracing only a part of one street, may be validly created by proper city ordinances enacted pursuant to the provisions of such statute.

Acts cited and construed: 1905, ch. 278.

Constitution cited and construed: Art. 2, secs. 28 and 29.

Cases cited and overruled: Taylor v. Chandler, 9 Heis., 352; Reelfoot Lake District v. Dawson, 97 Tenn., 151.

Cases cited and approved: Franklin v. Maberry, 6 Hum., 368; Washington v. Nashville, 1 Swan, 177, 180; Whyte v. Nashville, 2 Swan, 364; Nashville v. Berry, 2 Tenn. Cases, 561, 563; Louisiana v. Pilsbury, 105 U. S., 295; Institution v. Jersey City, 113 U. S. 506; Spencer v. Merchant, 125 U. S., 355; Railroad v. Decatur, 147 U. S., 198, 199; French v. Barber Asphalt Co., 181 U. S., 324; Norwood v. Baker, 172 U. S., 269; Tonawanda v. Lyon, 181 U. S., 389; Webster v. Fargo, 181 U. S., 394, 395; Farm Co. v. Detroit, 181 U. S., 396; Schaefer v. Werling, 188 U. S., 516; Wright v. Boston, 9 Cush., 233, 241; McGonigle v. Allegheny City, 44 Pa., 118, 121; Litchfield v. Vernon, 41 N. Y., 123, 133; Macon v. Patty, 57 Miss., 378; Madera Irrigation District Bond Case, 28 Pac., 272, 14 L. R. A., 767, 27 Am. St. Rep., 106; Cain v. Davie Co., 86 N. C., 8; Shuford v. Lincoln Co., 86 N. C., 552; Busbee v. Walker Co., 93 N. C., 143; Raleigh v. Peace, 110 N. C., 32; Wilmington v. Yopp, 71 N. C., 76; Sears v. Board (Mass.), 53 N. E., 138, 43 L. R. A., 836; Weed v. Boston, 172 Mass., 28; Huston v. Tribbetts, 171 Ill., 547; King v. Portland, 38 Or., 402; Sheley v. Detroit, 45 Mich., 431.

3. SAME. SAME. Same. Such statute is not unconstitutional as deprivation of property without due process of law.

A statute (Acts 1905, ch. 278) providing for city improvement districts and special assessments for improvements therein is not unconstitutional as the taking of property of the landown-

Arnold v. Knoxville.

ers so taxed for public purposes without just compensation and without due process of law. (*Post, pp.* 200, 201, 204, 222, 223.)

Cases cited and approved: French v. Asphalt Co., 181 U. S., 324; Cain v. Davie Co., 86 N. C., 8; Shuford v. Lincoln Co., 86 N. C., 552; Busbee v. Walker Co., 93 N. C., 143; Raleigh v. Peace, 110 N. C., 32.

4. **CONSTITUTIONAL LAW.** Contemporary construction long acquiesced in is of much weight, still plain and palpable error will be corrected.

While the contemporary construction of a constitutional provision, which has been long acquiesced in, is entitled to great weight in determining the meaning of the same; still if such construction is plainly and palpably erroneous the court will correct it   (*Post, pp.* 201, 202.)

Case cited and approved:   Coleman v. Campbell, 3 Tenn Cases, 355, 364, 365.

---

FROM KNOX.

---

Appeal from the Chancery Court of Knox County.— JOSEPH W. SNEED, Chancellor.

JOHN W. GREEN, for complainants.

J. W. CULTON, J. W. CALDWELL, HORACE VAN DEVENTER, and CLARENCE W. BARBER, for defendants.

---

MR. JUSTICE WILKES delivered the opinion of the Court.

This cause questions the constitutionality of chapter 278, p. 585, of the Acts of 1905.

The act, in substance, provides for the creation of improvement districts in the city of Knoxville, and the payment of the expenses incurred thereby for public improvements by special assessments on abutting property.

The caption of the act, which sets out its purpose, is as follows:

"An act to provide for the creation of improvement districts for the purpose of opening, widening, extending, grading, curbing, guttering, paving, gravelling, macadamizing, parking, laying permanent sewers on, upon, or in any street, highway, avenue or alley, within the corporate limits of any town in this State, having a population of not less than 32,000, nor more than 75,000 inhabitants, according to the federal census of 1900, or any subsequent census; to provide for the appointment of improvement district commissioners for said improvement districts; to provide a method of assessing a part of the cost of said improvements upon the land lying in, abutting on or adjacent to said improvement districts, and of paying for said improvements; and to authorize the issuance of bonds, or certificates to pay for the same, and the redemption of said bonds."

The bill was filed by two taxpayers and citizens of Knoxville, owning real estate affected by this act and the ordinances of the city passed thereunder establishing improvement districts, to enjoin proceedings to make assessments as the act provides.

Complainants allege that they have paid all taxes legally assessed or assessable against their property, and they charge that the special assessment attempted to be levied for street improvements is illegal, because unconstitutional, in that it violates article 2, section 28 of that instrument, which provides that "all property shall be taxed according to its value, that value to be ascertained in such manner as the legislature shall direct, so that taxes shall be equal and uniform throughout the State."

The text of the constitutional provision is as follows:

Article 2, section 28: "All property, real, personal or mixed, shall be taxed   .   .   . All property shall be taxed according to its value, that value to be ascertained in such manner as the legislature shall direct so that taxes shall be equal and uniform throughout the State.   No species of property upon which a tax may be collected, shall be taxed higher than any other species of property of the same value, but the legislature shall have power to tax merchants, peddlers, and privileges, in such manner as they may from time to time direct."

Section 29.   "The general assembly shall have power to authorize the several counties and incorporated towns in this State, to impose taxes for county and corporation purposes respectively, in such manner as shall be prescribed by law; and all property shall be taxed according to its value, upon the principles established in regard to State taxation."

The bill is filed to enjoin the further execution of the act, and various allegations are made to point out where-

in the act is invalid, unjust, oppressive, and unconstitutional.

It is alleged that property adjacent to complainants', but outside the improved districts, will be benefited not less than the property within them, but will be exempt from the special tax.

It is insisted that any improvement of a public nature in the city should be paid for by all the property owners of the city.

It is alleged that the act in question is illegal for the further reason that the improvements on the real estate assessed under it are exempt from the operation thereof, and because the assessments do not extend to personal property, and because the act imposes burdens of taxation which are not equal and uniform, and do not apply to all property.

It is denied that the city had the right to "divide itself wholly, or partly, into improvement districts," and impose taxes on persons owning property in such districts, which are not imposed upon others, or to impose a different rate of taxation upon property owners in different districts.

They allege that under said act the defendant is taking their property for public purposes without just compensation and without due process of law, and is thereby attacking their privileges and immunities as citizens of the United States, and is casting a cloud upon their titles.

Finally, they allege that the city is using all possible

haste to put said act and the ordinances passed in pursuance of it into operation; and they prayed that said act and ordinances may be decreed to be unconstitutional and void, and for preliminary and perpetual injunction.

The bill was demurred to by the city, and the demurrer was overruled, and the city has appealed.

No question is made but that injunction is the proper remedy, if complainants are entitled to relief upon the ground that the assessment is illegal and invalid. See *Norwood* v. *Baker,* 172 U. S., 292, 19 Sup. Ct., 187, 43 L. Ed., 443.

The sole question presented in this case is the validity of laws authorizing special assessments for local improvements.

It is insisted by complainants that this question has been settled in this State for more than thirty years; the leading case being that of *Taylor, McBean & Company* v. *Chandler,* reported in 9 Heisk., 349, 24 Am. Rep., 308, and since followed in a number of cases, the most important being the case of *Reelfoot Lake* v. *Dawson,* 97 Tenn., 151, 36 S. W., 1041, 34 L. R. A., 725.

It is conceded that, if the doctrine laid down in these cases and on which they rest is adhered to, the constitutionality of the present act cannot be maintained, and we are earnestly asked to overrule them or modify them.

Counsel for the city, in making this request of the court, does so with due deference to the rule laid down in *Coleman* v. *Campbell,* 3 Tenn. Cas., 355, that contemporary construction of a constitutional provision, which has

been long acquiesced in, is entitled to great weight in determining the meaning of the same.

This court recognizes to its fullest extent the necessity for stability, consistency, and a firm adherence to the doctrine of *stare decisis* in passing upon and construing any provision of the organic law; but, if an error has been committed, and becomes plain and palpable, the court will not decline to correct it, even though it may have been re-asserted and acquiesced in for a long number of years.

The case of *McBean* v. *Chandler,* above referred to was decided by judges who have had no superiors in our judicial history, and after a most painstaking and laborious consideration, and a presentation by an array of counsel of ability rarely to be found in any case and the opinion is able, comprehensive, exhaustive, and learned.

Granting the premises therein laid down as the controlling feature in the case, and the conclusion reached is inevitable and irresistible.

This controlling feature may be briefly stated to be that special assessments for local purposes fall within the meaning of taxes in the sense in which that term is used in our constitution, and hence they cannot be maintained, because they are not imposed upon the entire property of a State, county, or municipality, but only upon real estate in a particular locality, that they are not equal and uniform within the State, county, or municipality, as the case may be, and not laid according to value.

If we grant that special assessments for local purposes fall within the provisions of article 2, sections 28 and 29, of the constitution, and are taxes within the meaning of those sections, then they cannot be sustained as constitutional, and the present act must be declared invalid.

The *McBean Case,* and the other cases based upon it, especially the *Reelfoot Lake Case,* are founded upon the ruling that special assessments do fall within the provisions of these sections, and the provisions of the statute authorizing them not being in conformity with the fundamental principle of equality, uniformity, and generality, such statute is invalid.

This question is therefore the crucial one in the case; and with it decided there remains but little ground for controversy.

Briefly stated, it was held in the *McBean Case* that taxes could be laid for public purposes only and according to some rule of apportionment, and that equality was of the essence of the power. Hence a State burden of taxation could not be laid upon any territory less than the whole State, a county tax must be laid upon the entire county, and a city tax upon the whole of the city, and these requirements are denominated as fundamental.

It was further held that the constitution of Tennessee does not recognize the principle that taxation may be apportioned according to benefits received, but that all taxation must be imposed upon the fundamental principles of equality and uniformity, and this, necessarily and expressly, excludes the power to levy a tax upon any

other basis or principle, either for general or local purposes.

It was also held that the constitutional provision provided the only legitimate means and modes of providing revenues for the State, counties, and municipal corporations, and such revenues could only be raised under that authority, and in the manner prescribed by it, and that no change in name, such as calling the imposition a special assessment, could change the essential nature of the thing, so as to escape constitutional regulation by a mere play upon words, or by giving the laying of taxes a different name or designation.

It was further held, that apart from the exercise of the taxing power, property cannot be taken to satisfy what is called a "special assessment," unless under the exercise of eminent domain, and then by making just compensation to the individual, and not to the public generally.

It was also held that an assessment for improvements, based on the frontage of lots on the streets to be improved, was absolutely void, and contained no element of equality and uniformity, if considered as a tax, and gave no compensation to the lot owners, if considered as an exercise of eminent domain.

The text-books on constitutional and municipal law present an unbroken line in opposition to the doctrines thus laid down, and are based upon the view that there is a material and fundamental difference between special assessments for local purposes and general taxation for

governmental purposes, as provided in the constitutions of the various States.

Mr. Dillon, in his work on Municipal Corporations (volume 2, section 761), says, in substance:

"A local assessment upon property immediately and specially benefited by a local improvement of a street is distinguishable in many respects from a tax levied for the general purposes of the State or the general purposes of the municipality.

"The soundness or reasonableness of this proposition is recognized by the legislation of parliament, which has constantly distinguished between taxes for the benefit of the whole kingdom and those laid for the improvement of a particular district. It is also recognized by the legislation of perhaps every State in the Union. Hence, as is elsewhere shown, a statute exemption of designated property from 'taxation' does not include an exemption for local assessments. Hence, also, as we have already seen, provisions in State constitutions concerning equality of 'taxation' are generally, although not invariably, held not to apply by their intrinsic force to local assessments."

Smith, in his treatise on Municipal Corporations (section 1228a), says:

"A special assessment, or 'local assessment,' as it is frequently called, is a species of taxation imposed by municipalities for the purpose of local improvement, and is based upon the assumption that the property in the locality of a proposed improvement will be specially and peculiarly benefited thereby, by which a duty is imposed

upon the owners to contribute an amount in payment of the cost of improvement equal to the benefits received. There are manifestly many improvements in which the inhabitants of a municipality in the aggregate are but remotely interested, but which add materially to the value of the neighboring property as well as to the convenience, safety, and enjoyment of local residents. Special assessments rest upon the ground that special burdens may be imposed for special or peculiar benefits accruing from public improvements. It is obvious that in a matter of local improvement a burden ought not to be imposed on the whole for the benefit of a few. In other words, general taxation for merely local purposes is not only unjust but is not a legitimate function of government."

Judge Cooley (volume 2 [3d Ed.] 1153) says "Special assessments are a peculiar species of taxation standing, apart from the general burdens imposed for State and municipal purposes, and governed by principles that do not apply universally. The general levy of taxes is understood to exact contributions in return for the general benefits of government and it promises nothing to the person taxed, beyond what may be anticipated from an administration of the laws for individual protection and the general public good. Special assessments on the other hand, are made upon the assumption that a portion of the community is to be specially and peculiarly benefited in the enhancement of the value of property peculiarly situated as regards a contemplated expenditure of public funds, and in addition to the general levy, they de-

mand that special contributions, in consideration of the
special benefits, shall be made by the persons re-
ceiving it. The justice of demanding the special contri-
butions is supposed to be evident in the fact that the per-
sons who are to make it, while they are made to bear the
expense of a public work, are at the same time to suffer
no pecuniary loss thereby; their property being increased
in value by the expenditure to an amount at least equal
to the sum they are required to pay. This is the idea that
underlies all these levies."

Judson on Taxation, section 355, says:

"Special assessments for local improvements are made
under the sovereign power of taxation, yet they are clear-
ly distinguished from regular tax levies made under
state authority for general public purposes. Taxes prop-
er, or general taxes, it was said by the supreme court,
proceed upon the theory that the cost of government is a
necessity that it cannot continue without means to pay
its expenses, that for those means it has the right to com-
pel all citizens and property within its limits to contrib-
ute, and that for such contribution it renders no special
benefit, but only secures to the citizen that general bene-
fit, which results from the protection of his person and
property and the promotion of those various schemes
which have for their object the welfare of all. On the
other hand, special assessments, or special taxes, are jus-
tified by the principle that when a local improvement en-
hances the value of neighboring property that property
should pay the expense. Special assessments are made

upon the assumption that a portion of the community will be specially and peculiarly benefited by the enhancement of the value of property peculiarly situated as regards the contemplated expenditure of public funds, and in addition to the general levy, special contributions in consideration of the special benefit are required from the party specially benefited."

1 Desty on Taxation, p. 4, says:

"The law makes a plain distinction between taxes which are burdens imposed upon persons or property to raise money for public purposes, and assessments for city, and village improvements, which are not regarded as burdens, but as an equivalent or compensation for the enhanced value which the property of the person assessed has derived from the improvement."

In Elliott on Roads and Streets (2d Ed.), section 543, it is said:

"A distinction is made between local assessments and taxes levied for general revenue purposes. The question has been before the courts time and time again, and the almost unruffled current of judicial opinion is that an assessment for a local improvement is not a tax within the meaning of the constitutional provisions requiring uniformity of taxation. Local assessments are not ordinary taxes levied for the purpose of sustaining the government, but they are charges laid upon the individual property because the property upon which the burden is imposed receives a special benefit which is different from

the general one, which the owner enjoys in common with others as a citizen of the commonwealth."

In 25 Am. & Eng. Ency. Law, pp. 1168, 1169, it is said:

"A special assessment is materially different in its nature from a tax. This, where there is an exemption from 'taxation,' such exemption is limited to taxation for general governmental and municipal purposes, and does not extend to or include special assessments. Similarly, constitutional provisions that all taxes shall be equal and uniform apply only to general taxation, and have no application to local assessments. . . . The power of the legislature to authorize the levy of special assessments upon real property to pay for public improvements, according to the special benefits inuring to the property by reason of the making of the improvements, is universally acknowledged. Such assessments are levied in the exercise of the power of taxation, and not in the exercise of the power of eminent domain. The foundation of the levy is the benefit conferred upon the property assessed by the public improvement, and the amount of the assessment cannot exceed the amount of such benefit."

The same doctrine is laid down in McQuillin on Municipal Ordinances, section 522 et seq., and also in 1 Hare's Am. Const. Law, 301.

Leaving the realm of the text-writers, and coming to the adjudications of the courts:

We find that, with the exception of Tennessee, and possibly South Carolina, from the supreme court of the

115 Tenn.—14

United States, through an unbroken line of more than forty States, the legality and validity of special assessments for local purposes has been sustained.

They have been upheld in the supreme court of the United States (*Provident Institution* v. *Jersey City*, 113 U. S., 506, 5 Sup. Ct., 612, 28 L. Ed., 1102; *Tonawanda* v. *Lyon*, 181 U. S., 389, 21 Sup. Ct., 609, 45 L. Ed., 908; *Webster* v. *Fargo*, 181 U. S., 394, 21 Sup. Ct., 623, 645, 45 L. Ed., 912; *Cass Farm Co.* v. *Detroit*, 181 U. S., 396, 21 Sup. Ct., 644, 645, 45 L. Ed., 914, 916, and in the following States: Alabama, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Illinois, Indiana, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, New Jersey, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Texas, Utah, Virginia, Vermont, Washington, West Virginia, Wisconsin.

A full discussion of the subject and collation of the cases from the supreme court of the United States and the supreme courts of the several States will be found in 2 Cooley on Taxation, from page 1184 to page 1300; also in 25 Am. & Eng. Ency. Law, from page 1168 to page 1180, inclusive. See, also, Ingersoll on Public Corporations, section 113.

Quite a full summary of the constitutions of the different States will be found in Cooley on Taxation (3d Ed.), beginning on page 1184, vol. 2, of the edition of 1903.

Of these States, Arkansas, Illinois, Minnesota, and Nebraska have constitutional provisions authorizing special assessments, although in Arkansas and Illinois they were recognized before the adoption of the present constitutions.

Florida, Kansas, and Wisconsin have constitutions which require equality and uniformity, but do not require taxation according to value.

Constitutions requiring taxation to be uniform within certain territorial limits or on the same class of subjects are Colorado, Georgia, Missouri, Nebraska, New Hampshire, Pennsylvania, and Virginia.

Constitutions requiring equality, uniformity, and taxation according to value are Arkansas, Georgia, Indiana, Louisiana, South Carolina, Tennessee, Texas, West Virginia, Michigan, and Mississippi.

Constitutions requiring taxation according to value, with or without uniformity and equality, are Alabama, Arkansas, California, Georgia, Indiana, Kentucky, Louisiana, Maine, Michigan, Mississippi, Missouri, Nebraska, North Carolina, North Dakota, Ohio, Oregon, South Carolina, Texas, Washington, and West Virginia.

It will be seen that there are three constitutions requiring uniformity or equality, or both, and not expressly, taxation by value, all of which have been construed as permitting special assessments, although the rule is qualified in Wisconsin; second, that there are ten constitutions requiring equality, uniformity, and taxation according to value, eight of which have been con-

strued as permitting special assessments, the exceptions being South Carolina and Tennessee; third, that there are twenty-one constitutions which expressly require taxation according to value, nineteen of which have been construed as permitting special assessments, the exceptions being South Carolina and Tennessee.

While special assessments are in the nature of taxation, still they are not taxation for general governmental purposes, in the sense provided for in the constitution. They are different in many respects. Some of these differences are pointed out in the cases.

Thus exemptions which apply in cases of governmental taxes do not extend to special assessments. Special assessments do not recur annually, or at stated periods, but are imposed only as occasion requires. Special assessments are levied alone on real estate, and not upon personal property. There are numerous distinctions pointed out in the cases. 25 Am. & Eng. Ency. Law (2d Ed.), pp. 1168, 1169, and authorities there cited.

By an unbroken line of authorities, except Tennessee, it has been held that the legislature may authorize municipalities to make such assessments.

It was so held in Arkansas, California, Colorado, Illinois, Iowa, Kansas, Kentucky, Louisiana, Maryland, Michigan, Minnesota, Nebraska, New Jersey, New York, Ohio, Oregon, Pennsylvania, South Carolina, Texas, Vermont, and Wisconsin, and in other States. See the cases collated in 25 Am. & Eng. Ency. Law (2d Ed.), p. 1170.

Arnold v. Knoxville.

And it is likewise so held in the supreme court of the United States. Id.

The constitutionality of such assessments has been attacked and upheld in a large number of the States of the Union, and in the supreme court of the United States. See a collation of authorities in 25 Am. & Eng. Ency. Law (2d Ed.), pp, 1171, 1172.

The cases hold that such assessments, based upon a special benefit accruing to the assessed property, do not fall within the constitutional inhibition against taking private property for public use without compensation. See the authorities collated in 25 Am. & Eng. Ency. Law (2d Ed.), p. 1172.

It is likewise universally held that grading, regrading, paving, and repaving streets are purposes for which special assessments may be made by a city or town, and so, also are curbing, guttering, constructing sidewalks, and many other works of improvement. See the doctrine fully discussed, and the authorities collated in 25 Am. & Eng. Ency. Law (2d Ed.), pp. 1177-1183, inclusive.

Special assessments are based upon theory that property assessed will be specially benefited thereby above the benefits received by the public at large; and, while the results may not be such as are anticipated, still the principle holds good. And it is likewise held that the burden may be apportioned between the public and the property benefited, and between the property owners themselves, according to actual benefits expected, or according to value, or, in some jurisdictions, ac-

cording to area or frontage, as the legislature may direct.

The most equitable plan of apportionment appears to be an assessment according to value and benefits received, and it has been held that in assessments based upon value, the worth of the improvements, should be deducted. These features of the case are also discussed fully in 25 Am. & Eng. Ency. Law (2d Ed.), pp. 1197-1201, inclusive, and the cases there collated.

It is well to remark that the power to assess is not unrestricted as to amount; but must be measured by the benefits received, or reasonably anticipated, and the property owner must have an opportunity to be heard in regard to the assessment. 25 Am. & Eng. Ency. Law (2d Ed.), pp. 1194, 1195, 1211-1228, inclusive.

As to the other details of making such assessments, to what extent they may go what provisions may be valid, and what not, we refer again to the excellent article in 25 Am. & Eng. Ency. Law (2d Ed.), pp. 1166-1245.

These details are not now before us, but we have before us only the general question of the constitutional right to make special assessments for local purposes.

In view of the conflict between our own cases and that of other states, it is proper to refer to some of the latter to show the theory upon which such assessments have been upheld. We can refer to only a few cases by way of illustration.

In *Spencer v. Merchant*, 125 U. S., 355, 8 Sup. Ct., 926, 31 L. Ed., 763, decided in 1887, the court said:

Arnold v. Knoxville.

"The legislature in the exercise of its power of taxation has the right to direct the whole or a part of the expense of a public improvement, such as the laying out, grading or repairing of a street, to be assessed upon the owners of lands benefited thereby; and the determination of the territorial district which should be taxed for a local improvement is within the province of legislative discretion."

In *Louisiana* v. *Pilsbury,* 105 U. S., 295, 26 L. Ed., 1090, it is said:

"It is impossible to apply to the varying wants of a municipality the rule invoked with reference to taxation for State purposes on property throughout the State, without producing the very inequality which that rule was designed to prevent. There would often be manifest injustice in subjecting the whole property of a city to taxation for an improvement of a local character. The rule that he who reaps the benefits should bear the burden must in such cases be applied."

In *Illinois Central R. R.* v. *Decatur,* 147 U. S., 198, 199, 13 Sup. Ct., 293, 294, 37 L. Ed., 132, it is said:

"Special assessments or special taxes proceed upon the theory that when a local improvement enhances the value of neighboring property that property should pay for the improvement. In *Wright* v. *Boston,* 9 Cush., 233, 241, Chief Justice Shaw said: 'When certain persons are so placed as to have a common interest among themselves, but in common with the rest of the community, laws may justly be made providing

that, under suitable and equitable regulations, those common interests shall be so managed that those who enjoy the benefits shall equally bear the burden.' In *McGonigle* v. *Allegheny City,* 44 Pa., 118, 121, is this declaration: 'All these municipal taxes for improvement of streets rest for their reason upon the enhancement of private properties.' In *Litchfield* v. *Vernon,* 41 N. Y., 123, 133, it was stated that the principle is 'that the territory subjected thereto would be benefited by the work and change in question.' In Cooley on Taxation (page 416, c. 20, par. 1) the matter is thus discussed by the author: 'Special assessments are a peculiar species of taxation, standing apart from the general burdens imposed for State and municipal purposes, and goverened by principles that do not apply generally. The general levy of taxes is understood to exact contributions in return for the general benefits of government, and it promises nothing to the persons taxed beyond what may be anticipated from an administration of the laws for individual protection and the general public good. Special assessments, on the other hand, are made upon the assumption that a portion of the community is to be specially and peculiarly benefited, in the enhancement of the value of the property peculiarly situated as regards a contemplated expenditure of public funds, and, in addition to the general levy, they demand that special contributions, in consideration of the special benefit, shall be made by the person receiving it. The justice of demanding the special contributions is supposed to be

Arnold v. Knoxville.

evident in the fact that the persons who are to make it, while they are made to bear the cost of a public work, are at the same time to suffer no pecuniary loss thereby; their property being increased in value by the expenditure to an amount at least equal to the sum they are required to pay. This is the idea that underlies all these levies. As in the case of all other taxation, it may sometimes happen that the expenditure will fail to realize the expectation on which the levy is made, and it may thus appear that a special assessment has been laid when justice would have required the levy of a general tax, but the liability of a principle to erroneous or defective application cannot demonstrate the unsoundness of the principle itself, and that which supports special assessments is believed to be firmly based on reason and justice.'

"These distinctions have been recognized and stated by the courts of almost every State in the Union, and a collection of the cases may be found in any of the leading text-books on taxation."

In *Webster* v. *Fargo,* 181 U. S., 395, 21 Sup. Ct., 624, 45 L. Ed., 912, it is said:

"But we agree with the supreme court of North Dakota in holding that it is within the power of the legislature of the State to create special taxing districts, and to charge the cost of a local improvement, in whole or in part, upon the property in said district, either according to value, or superficial area, or frontage."

The constitution of North Dakota requires taxation to

be by uniform rule, to extend to all property, and to be according to its true cash value, and thus the decision in *Webster* v. *Fargo* applies to requirements fully as strong as those in our own constitution. Cooley on Taxation (3d Ed.), p. 1194.

In *Macon* v. *Patty,* 57 Miss., 378, 34 Am. Rep., 451, 2 Cooley on Taxation (3d Ed.), p. 1154, it is said:

"A tax is levied on the whole State or a known political subdivision, as a county or a town. A local assessment is levied on the property situated in a district created for the express purpose of the levy, and possessing no other function, or even existence, than to be the thing on which the levy is made. A tax is a continuing burden, and must be collected at stated short intervals for all time, and without it government cannot exist. A local assessment is exceptional, both as to time and locality. It is brought into being for a particular occasion, and to accomplish a particular purpose, and dies with the passing of the occasion and the accomplishment of the purpose. A tax is levied, collected, and administered by a public agency, elected by and responsible to the community upon which it is imposed. A local assessment is made by an authority *ab extra.* Yet it is like a tax, in that it is imposed under an authority derived from the legislature, and is an enforced contribution to the public welfare, and its payment may be enforced by the summary method allowed for the collection of taxes. It is like a tax, in that it must be levied for a public purpose, and must be apportioned by some reasonable rule among

those upon whose property it is levied. It is unlike a tax, in that the proceeds of an assessment must be expended in an improvement from which a benefit clearly exceptive and plainly perceived must inure to the property upon which it is imposed."

In the *case of the Bonds of the Madera Irrigation District* the supreme court of California approves the holding in an earlier case, as follows:

"It is equally clear that those clauses which provide that taxation shall be equal and uniform throughout the State and prescribe the mode of assessment, and the persons by whom it shall be made, and that all property shall be taxed, have no application to assessments levied for local improvements." 28 Pac., 272, 14 L. R. A., 767, 27 Am. St. Rep., 106."

On the same page the California court, apparently, approved the doctrine that assessment for local improvements may be made according to the value of the property; citing cases from Massachusetts, Kansas, Oregon, Ohio, and Missouri.

In *Raleigh* v. *Peace,* a North Carolina case (110 N. C., 32, 14 S. E., 521), also reported in 17 L. R. A., 332, it is said:

"These assessments are not to be confounded with the exercise of the right of eminent domain (Cooley, Const. Lim., 498; 2 Dill. Mun. Corp., 738; Lewis, Em. Dom., 4), and it is also to be observed that while they are taxes in a general sense, in that the authority to levy them must be derived from the legislature, they are nevertheless

not to be considered as taxes falling within the restraints imposed by article 5, section 3, of the constitution, although the principle of uniformity governs both. *Shuford* v. *Lincoln County Com'rs*, 86 N. C., 552; *Cain* v. *Davie County Com'rs*, Id., 8; *Busbee* v. *Wake County Com'rs*, 93 N. C., 143; Cooley, Const. Lim., 498; 2 Dill., Mun. Corp., 755.

The principle deducible from the foregoing quotations finds a striking illustration in the facts of the present case. The district improved by the pavement embraces only a part of one street; and, while the pavement may add very greatly to the convenience and comfort of all of the citizens, it at the same time confers upon the abutting real property an enhanced pecuniary value out of all proportion to the benefits inuring to the public at large. Would it be just that all should be taxed alike, and that the owner of property in a remote part of the city be compelled to contribute as much towards the particular improvement as those whose lands are thus peculiarly benefited? This would savor very much of the "forced contributions of the olden time, which are so generally denounced as obnoxious to the principles of free government; and the bare statement of the proposition shocks all sense of justice, and furnishes its own refutation. It is therefore but pre-eminently just, as well as the duty of the lawmaking power, to provide for an equitable adjustment of such burdens in proportion to the benefits conferred; and it is for the very purpose, as we have seen, of accomplishing this end, and of pre-

Arnold v. Knoxville.

venting so great a perversion of the taxing power that these local or special assessments are almost universally resorted to.   It is true that the power to levy such assessments is sometimes abused, and that some of the methods adopted have been judically condemned, but the existence of the power itself is as well established as it is possible by judicial decision to establish any legal principle whatever.   *Wilmington* v. *Yopp,* 71 N. C., 76; *Cain* v. *Davie County Com'rs,* and *Busbee* v. *Wake County Com'rs,* supra; 2 Dill., Mun. Corp., 761; Cooley, Const. Lim., 506; 1 Hare, Am. Const. Law, 301; Elliott, Roads & Streets, 370.

In *Sears* v. *Board of Aldermen* (Mass.), 53 N. E., 138, 43 L. R. A., 836, it is said:

"In the last analysis the assessment is not laid as a part of the burden of public expenditure put upon the land; for the burdens which are strictly public are to be shared proportionally by all the people, according to the value of their taxable property. It is rather in the nature of a diminution of that which at first is a public burden, by substracting from it the amount of the special enhancement of value of private property, from the expenditure of public money in part for its benefit.   It is taxation in the sense that it is a distribution of that which is originally a public burden, growing out of an expenditure primarily for a public purpose.   While these assessments must be founded upon benefits, the courts have generally recognized the difficulty, and in many cases the impracticability, of attempting to estimate benefits to

estates one by one without some rule or principle of general application which will make the assessments reasonable and proportional, according to the benefits. Accordingly the determination of such a rule or principle by the legislature itself, or by the tribunal appointed by the legislature to make the assessments, has commonly been upheld by the courts. If, however, its effect plainly is to make an assessment upon any estate substantially in excess of the benefit received, it is set aside. *Weed* v. *Boston,* 172 Mass., 28, 51 N. E., 204, 42 L. R. A., 642; *Village of Norwood* v. *Baker,* 172 U. S., 269, 19 Sup. Ct., 187, 43 L. Ed., 443. Assessments of special taxes by an estimate of the particular benefits to each lot, by measurement of the amount of frontage upon a street or sewer, by the measurement of the area of the lots, and by a valuation of the property, have all been sustained."

The supreme court of Illinois has expressed itself as follows:

"Special assessments like this, although levied through the exercise of the taxing power, are not regarded as such ordinary taxes, but as an equivalent for benefits in the increased value of the property." *Huston* v. *Tribbetts,* 171 Ill., 547, 49 N. E., 711, 63 Am. St. Rep., 275.

In *French* v. *Barber Asphalt Co.,* 181 U. S., 324, 21 Sup. Ct., 625, 45 L. Ed., 879, it is said:

"The apportionment of the entire costs of the street pavement upon the abutting lots according to their frontage, without any preliminary hearing as to benefits, may be authorized by the legislature, and this will

Arnold v. Knoxville.

not constitute the taking of property without due process of law."

In *King* v. *Portland,* 38 Or., 402, 63 Pac., 2, 55 L. R. A., 817, it is said:

"The principle upon which is based the authority to take money as a tax for public use is that the taxpayer receives, or is supposed to receive, a just remuneration in the protection which the government affords to life, liberty, and property, and in the increase in the value of possessions which comes from the use to which the money raised by the tax is applied. Cooley, Const. Lim. (6th Ed.), 613. Local or special assessments for local improvements stand upon a different basis. They are made and sustained upon the assumption that a prescribed portion of the community is to be especially benefited, in the enhancement of the value of the property peculiarly situated, as regards the proposed expenditure of the funds to be raised by the assessment. It is but a demand of simple justice that special contributions in consideration of special benefits should be made by those receiving the benefits, but such contributions ought not, by the same demand of justice, to be enforced in any case beyond the benefits received. Cooley, Taxation (2d Ed.), 606. Such an assessment is not in conflict with the provision of our State constitution requiring that 'all taxation shall be equal and uniform.' "

In *Cass Farm* v. *Detroit,* 181 U. S., 396, 21 Sup. Ct., 644, 645, 45 L. Ed., 914, 916, it was said:

"An assessment of the cost of paving upon abutting

property in proportion to the frontage of such property, when authorized by the city charter, and ordinances is not in violation of the constitution of the United States."

In the opinion it is said:

"The State supreme court disposed of this contention in the following language: 'In paving cases the rule has been settled in this State by many decisions that it is competent for the legislature to authorize the cost of paving streets to be assessed upon the abutting property according to frontage.' "

It was said by Mr. Justice Cooley, in *Sheley* v. *De troit,* 45 Mich., 431, 8 N. W., 52: "We might fill pages with the names of cases decided in other States which have sustained assessments for improved streets, though the apportionment of the cost was made on the same basis as the one before us. If anything can be regarded as settled in municipal law in this country, the power of the legislature to permit such assessments and to direct an apportionment of the cost by frontage should by this time be considered as no longer open to controversy. Writers on constitutional law, on municipal law, and on the law of taxation have collected the cases and have recognized the principle as settled; and, if the question were new in this State, we might think it important to refer to what they say, but the question is not new. It was settled for us thirty years ago."

In *Schaefer* v. *Werling,* the supreme court of the United States declared the effect of the Indiana statute, which was construed in that case, to be as follows:

Arnold v. Knoxville.

"It is predicated on the assumption that, as a rule, property along the line of a street improvement will be equally benefited; that, as a rule, property fronting upon a street, foot by foot, will be of equal value, and should therefore be equally assessed." *Schaefer* v. *Werling,* 188 U. S., 516, 23 Sup. Ct., 449, 47 L. Ed., 570.

Similar holdings from other States and from the supreme court of the United States might be indefinitely multiplied.

Suffice it to say there is not a dissent upon the general question, except in the case of Tennessee, and possibly South Carolina, and even the latter is uncertain, if not with the majority.

It will be noted that the cases place the construction of pavements under the same power.

Our own court has held that property owners may be compelled to lay pavements in front of their premises, or pay the costs of the same, if built by the city.

The leading case is *Mayor* v. *Maberry,* 6 Humph., 368, 44 Am. Dec., 315, in which the power to compel the building of pavements was based upon the duty of the property owner to perform the work for the comfort of the citizen, and was in the nature of a removal of a nuisance. This was in 1845.

It was followed approvingly by *Washington* v. *Mayor,* 1 Swan, 180, in 1851; and put on the ground that it was a work required for the public good, but which, at the same time, enhanced greatly the value of the property thus improved, and might be demanded of the citizen as

115 Tenn.—15

a matter of principle, as well as of necessity, just as the inhabitants of the county may be compelled to keep up the public roads, or a militia man can be compelled to serve on the militia, or patrol his neighborhood.

The court in this case says, tersely:

"We can scarcely find in the exercise of the sovereign authority any subject in relation to which public burdens are imposed in which there is much nearer approach to equality than exists in the operation of the law in question. We think, therefore, it is constitutional, and conferred on the corporation power to make the by-laws in question."

And this was said conceding that inequality might arise, and burdens be created in putting the act and ordinances in force and effect.

This, as well as the original case, was approved and followed in *Whyte* v. *Mayor,* 2 Swan, 364, and was reaffirmed in *Mayor* v. *Berry,* 2 Tenn. Cas., 563.

In that case it is said:

"The ordinance, pursuing the legislative grant, requires a duty to be performed for the benefit, health, well-being, and comfort of the citizens . . . including the owner of the property. The pavement adds to the convenience and comfort of all who pass that way; the owner of the lot sharing largely in the advantage afforded, and deriving an additional advantage in the appreciation of the value of his property, still further increased by other walks and pavements made in front of other lots in that part of the city.

"It is for the benefit of all the citizens that such grants are made to the city authorities, and it is only so long as they are confined to benefits that the law will allow them.

"When they cease to be exercised for the benefit and comfort of the citizen and to promote the welfare of the community, and become oppressive and unreasonable, destroying the value of the property to the owner, or, as in the *McBean Case,* appropriating the entire value of the property, and in some instances more to the building of the improvements, then they pass without the spirit and purpose and authority of the constitution, and are void."

The *McBean Case* was one of extreme hardship, and was so treated by the court, inasmuch as it laid a tax of $1,500,000 upon about nine streets in the city of Memphis for a purpose, the building of a Nicholson pavement, which was not only not a public benefit or good, but a menace to health and an outrage upon both the city and the property owner. The decision in the *McBean Case* might very readily have rested alone upon the unreasonableness and extreme hardship of the ordinance and the great apprehension arising under its harsh conditions.

The principle which underlies the pavement cases and the laws providing for working public roads is the same that underlies the doctrine of special assessments; and, if the road laws and pavement laws are constitutional,

then special assessments for grading and improving streets are likewise constitutional.

No one now questions the validity or wisdom of the pavement or road laws; and the basis on which they rest is the same as that underlying special assessments.

The *Reelfoot Lake Case* reluctantly followed the *McBean Case,* while recognizing that the great weight of authority was against it. It adds nothing to the force of the *McBean Case,* but to the contrary.

The *McBean Case* recognizes a conflict between that case and the pavements cases; and sought to discredit the latter, but they have become the unquestioned law, and are in accord with all other authority.

That these cases cannot consistently stand together is, we think, manifest; and, when our own holdings are thus inconsistent and conflicting, they should be made to harmonize by adopting that view which is best supported by reason and authority.

Without passing upon all the provisions of the act and of the ordinances in question, but confining ourselves alone to the general question of the constitutionality of the law and ordinances and the power to make special assessments, we are of opinion that the act is constitutional, and that the ordinances are valid, in so far as they authorize special assessments for local benefits and purposes.

We think that none of the objections made to them in complainants' bill are well taken.

It follows that the cases of *Taylor, McBean & Com-*

---

Arnold v. Knoxville.

---

*pany* v. *Chandler,* 9 Heisk., 352, 24 Am. Rep., 308, and *Reelfoot Lake District* v. *Dawson,* 97 Tenn., 151, 36 S. W., 1041, 34 L. R. A., 725, and other cases holding doctrines contrary to what is herein laid down, must be overruled and modified so far as they conflict with the present holding.

The decree of the court below overruling the demurrer is reversed, the demurrer is sustained, and the bill is dismissed, at complainants' cost.

McAlister, J., dissents.

MR. JUSTICE NEIL delivered the following dissenting opinion.

I do not undervalue the painstaking and conscientious care with which the majority of the court have reached the conclusion just announced; but, finding myself unable to concur in that conclusion, and the question being an important one, I feel it my duty to assign my reasons in writing.

In my judgment the act upheld in the majority opinion is plainly void, because in violation of article 2, section 28, of our State constitution, which requires that all taxation shall be equal and uniform throughout the State, and shall be laid upon all property subject to taxation, and according to value. That special assessment laws are a form of taxation is conceded in the majority opinion in the language quoted from authorities cited in that opinion. We shall now recall a few of these, viz.:

"A special assessment, or 'local assessment' as it is frequently called, is a species of taxation imposed by

municipalities for the purpose of local improvement,"
etc. Smith, Municipal Corporations.

"Special assessments are a peculiar species of taxa-
tion, standing apart from the general burdens imposed
for State and municipal purposes," etc.   2 Cooley on
Taxation (3d Ed.), 1158.

"Special assessments for local improvements are
made under the sovereign power of taxation," etc.   Jud-
son on Taxation, section 355.

In 25 Am. & Eng. Ency. Law, pp. 1168, 1169, quoted
in the opinion, an effort is made to distinguish special
assessments from taxes, but near the close of the excerpt
the following concession is made: "Such assessments
are levied in the exercise of the power of taxation, and
not in the exercise of the power of eminent domain."

In the text of the majority opinion, as expressing the
conclusion drawn by the majority from the authorities
above referred to and other authorities, occurs the fol-
lowing:

"While special assessments are in the nature of taxa-
tion, still they are not taxation for general govern-
mental purposes, in the sense provided for in the consti-
tution.   They are different in many respects.   Some of
these differences are pointed out in the cases.   Thus ex-
ceptions which apply in cases of governmental taxes do
not extend to special assessments.   Special assessments
do not recur annually, or at stated periods, but are im-
posed as occasion requires.   Special assessments are lev-

Arnold v. Knoxville.

ied alone upon real estate, and not upon personal property."

But none of the foregoing differentiations relieve special assessments from the controlling features which is characteristic of all taxation; that is, that it is a monetary exaction imposed by the government upon the citizen, which, when realized, is to be expended by the government for purposes designated by it. This mark remaining, the differentiations referred to are immaterial, when we are considering the question whether special assessments are a form of taxation.

I need not, however, pursue this phase of the matter further, because it is conceded in substantially all of the authorities quoted with approval in the majority opinion that special assessments are a form of taxation.

If a form of taxation, then my proposition is that they fall under article 2, section 28, of our constitution. That section covers all forms of taxation. It makes no exception of any, and in my judgment this court is not authorized to sanction any.

The language of the constitution is:

"All property, real, personal, or mixed, shall be taxed, but the legislature may except such as may be held by the State, by counties, cities, or towns, and used exclusively for public or corporation purposes, and such as may be held and used for purposes purely religious, charitable, scientific, literary, or educational, and shall except one thousand dollars worth of personal property in the hands of each taxpayer, and the direct product of

the soil in the hands of the producer and his immediate vendee. All property shall be taxed according to its value, that value to be ascertained in such manner as the legislature shall direct, so that taxes shall be equal and uniform throughout the state. No one species of property from which a tax may be collected shall be taxed higher than any other species of property of the same value," etc. Article 2, section 28.

"The general assembly shall have power to authorize the several counties and incorporated towns in this State to impose taxes for county and corporation purposes respectively, in such manner as shall be prescribed by law; and all property shall be taxed according to its value, upon the principles established in regard to State taxation." Article 2, section 29.

Plainly under these sections of the constitution, whenever a tax is laid, it must be laid upon all property, real and personal, within the area covered by the tax; and with equal plainness it appears that the area covered must be the whole State if it be a State tax, the whole county if it be a county tax, the whole city if it be a city tax. No other form of tax is provided for or permitted under our constitution, and that constitution has always been so construed until to-day. The whole matter was thoroughly gone over in two well considered opinions by this court, which the opinion of the majority overrules. *Taylor, McBean & Company* v. *Chandler,* 9 Heisk., 349, 24 Am. Rep., 308, and *Reelfoot Lake Levee District* v. *Dawson,* 97 Tenn., 151, 36 S. W., 1041, 34 L. R. A., 725.

Arnold v. Knoxville.

The present tax is violative of the constitution because it is laid only upon land, and not upon both land and personalty, and because it is laid upon an area less than the whole city.

In conclusion, I wish to say that I am not unmindful of the importance of the vast array of authority referred to in the opinion of the majority, and upon this phase of the inquiry can only reply that upon this court is laid the duty of construing the constitution of this State, and of preserving it from violation or injury. The decisions of other courts, upon other constitutions, more or less similar, cannot be controlling upon me. We must decide for ourselves, and, having so decided, it can be to us no just ground of disquiet that other States have construed their constitutions in a different manner. Over thirty years ago, in the 9 Heisk. case, this court, conceding that other courts had taken a different view of the form of taxation known under the name of special assessments, solemnly declared that such taxation was not admissible under our constitution. Again, nine years ago, the whole question was a second time considered in an elaborate and able opinion in the *Reelfoot Lake Levee District Case,* and the same doctrine was again solemnly announced, notwithstanding the strong current of opposing decisions in other jurisdictions. Both decisions were by unanimous courts, and have hitherto withstood all assaults made upon them. I still think that both of these decisions contain sound expositions of our constitution.