## T. C. DRINNEN v. CITY OF MARYVILLE.

Eastern Section. September 3, 1927.

Petition for Certiorari denied by Supreme Court, February 4, 1928.

Kramer & Kramer, of Maryville, for appellant.

Gamble, Crawford and Goddard and J. L. Tweed, of Maryville, for defendant in error.

SNODGRASS, J. This is a contest over an assessment for street improvements levied against abutting lots on Wilson avenue, in Improvement District No. 9, of the City of Maryville, Tennessee. This improvement was made under the authority of Chapter 18 of the Acts of Tennessee as alleged, First Extra Session in the year 1913. There was and is no contest as to the right of the city to make such improvement, nor as to the right of the city to assess two-thirds of the cost of such improvement against abutting property owners on Wilson avenue which was made or included in District No. 9, of which plaintiff in error's lot was one; nor is there any contest but what he owned the property against which an alleged proportional part of such cost was assessed; but the confirmation of such assessment, which appears to be the final method by which an obligation is fixed against the property, was resisted. The plaintiff in error, among others, filed certain objections, which the statute provided for, and within the time scheduled therein. At the hearing, and after the filing of the original objections in writing, it was sought to interpose an additional objection numbered as 12. This was resisted upon the ground that it came too late, and the filing of the said additional ground was denied, and to which action an exception was had.

We think the additional ground should have been allowed in harmony with our liberal laws with respect to amendments. Besides, under a provision of the Act in question, in that portion of the same establishing his right to appeal, it is upon condition that he "made objection or protest to said levies or assessments at the time provided for and appointed for objecting thereto." This does not limit the grounds that may be specified to those made before the time appointed, but includes those made at said time. By the notice and resolution the commissioners were to assemble at 7:30 p. m. on May 24, 1921. It is true the notice required protestants to file protest on or before said date, but the clause of the Act above quoted seems to authorize such additional ground at the time, which would have justified the amendment.

The remaining objections were overruled, to which it appears that the property owners only excepted, and it does not appear from the record that there was any appeal from this overruling of their objections and confirming the assessment. But as no exception was taken in the court below to the jurisdiction to consider the case, and as the

petition perfecting the appeal recites that there was an appeal, this question would now and here be unimportant.

A trial was had before the court and jury, when at the close of the testimony of the plaintiff (the court having ruled that T. C. Drinnen, who alone had perfected an appeal, was in the attitude of a plaintiff contesting the confirmation, should take the lead) the City of Maryville moved for peremptory instructions to the jury to return a verdict in its favor, which motion was sustained by the court and such verdict returned; and it was thereupon ordered by the court that the suit of plaintiff T. C. Drinnen be dismissed, and that the defendant City of Maryville have and recover of said plaintiff and his surety on his prosecution bond, to-wit, J. G. Sims, all the costs of the case, for which execution was directed to issue.

Petitioner T. C. Drinnen made a motion for a new trial, and on the same being overruled has successfully appealed to this court, assigning the following as errors:

"First: The court was in error in holding that the petitioner must assume the position of plaintiff in this case and that the burden of proof is upon him to sustain his objections of defense."

"Second: The court was in error in holding that the costs of construction of the part of the storm sewer outside of the improvement district was a proper charge against petitioner."

"Third: The court was in error in excluding the certified copy of the assessment of the house and lot of the petitioner in question as offered with testimony of the witness, W. E. Parham."

"Fourth: The court was in error in holding that the City of Maryville could levy for the street improvement, more than fifty percent of the value of the lot without improvements as assessed for municipal purposes for the current year."

"Fifth: The court was in error in excluding the evidence offered by petitioner to show the cost of making similar improvements on adjoining streets."

"Sixth: The court was in error in excluding the testimony of witness S. H. Dunn, wherein the witness gave the cost of similar work done at about the same time, and stated that twelve dollars per front foot ($.00 to each property owner) would have been a reasonable price for the work done on this improvement."

"Seventh: The court was in error in excluding the testimony of the witness F. L. Proffitt, wherein the witness stated that he called the attention of the Engineer, D. W. Harmon, to the faulty work of the street, and the expense in connection therewith, and that the Engineer, with an oath, stated that it was none of Proffitt's business and that he (the Engineer) was being paid on a percent basis."

"Eighth: The court was in error in excluding the evidence offered by petitioner to show that his property is less valuable

on account of the condition of said paving than it would have been, had the street been paved in a good and workmanlike manner.''

''Ninth: The court was in error in directing a verdict in favor of the City of Maryville.''

It is manifest that the errors complained of can best be disposed of by considering the nature of the controversy. Without regard to the contract as effecting a liability, the commissioners undertook to effect a primary liability also against the property by an assessment made against it. This they had the right to do under the statute, and that too without any regard to the contract, which we think cuts no figure except as an item of evidence bearing upon the inducement to the undertaking of the enterprise and the fraud alleged in the prosecution of the work that has been done, the aggregate cost of which is a circumstance in fixing the amount of the alleged liability against petitioner's property, a part of its assessment. Appellant resists the confirmation of the assessment in this regard on two grounds, as set out in the second and fourth assignments. First, because it is claimed that, included in the aggregate amount for which the assessment is laid, there is a section at least of storm sewer that was not a part of but entirely outside the improvement in District No. 9, and therefore to this extent affected the aggregate as properly and reasonably assessable against his property. Secondly, that contrary to the direction of the statute the lot has been assessed with more than fifty percent of the value of the lot without improvements, as assessed for municipal purposes for the current year.

These two assignments, together with the Ninth, that the court was in error in directing a verdict in favor of the City of Maryville, raise questions as to the merits of the controversy. We do not think the court was in error in holding that the petitioner must assume the burden of evidence to establish the objection which the statute requires him to point out in relation to the assessment, which at that stage of the controversy is taken as prima facie correct. This assignment would be unimportant any way, as it is not claimed that petitioner was deprived of any evidence which might have been before the court or jury in the disposition of the case. If error it was, therefore, it would not be such as affected the merits of the controversy.

We do not think the objection as to the cost of the storm sewer claimed to be outside of the improvement district is well taken. All necessary storm sewers to drain the improvement of course are incident to the improvement itself and, being so, would project by necessary inference their necessary length for that purpose, even outside of the technical boundaries used to describe the place where the major improvement is to be made. We think there is no controversy as to the proof showing that the length of the storm sewer was a reasonable requirement to complete and effectuate the main improve-

ment in said district, and was by necessary inclusion a part thereof, and that objection is overruled.

The fourth assignment raises the question as to whether or not it was intended by the law under which this improvement was made to limit the amount of the assessment to fifty percent of the value of the naked lot abutting on the improvement, or to fifty percent of the value of the lot including the improvements. By Section 1991a13 of Shannon's Code, which is part of the law under which this improvement was made, it is provided:

"After completion of the work or improvement, it shall be the duty of said legislative body, in conformity with the requirements of said ordinance, to apportion two-thirds of the cost of such improvement upon the land abutting on or adjacent to said street, highway, avenue, alley or other public place, which apportionment shall be made against said land and the several lots or parcels thereof, according to the frontage of said lots or parcels on said street, highway, avenue or alley."

This provision determines the amount which the individual shall pay of the two-thirds of the amount assessable against all. It is regulated by the front foot, that is to say, in such proportion as his front footage bears to the whole; that same is the entire amount his property shall bear of the two-thirds cost assessable against it.

By Section 1991a14 there is a further limitation upon the amount assessable against it, to the effect that it

"shall not exceed one-half of the assessed value of said lot for municipal taxes for the current year; and the city or town shall pay any part of such levy or assessment upon or against any such lot or parcel of land as may be in excess of one-half of said assessed value thereof."

We think this provision a limitation upon the power of the city as to the aggregate amount that it may place upon an individual lot or parcel of land for works of internal improvement of that kind by way of protection to the land owner. This is not the kind of a tax falling under the constitutional principle of cash value and uniformity, nor, as stated in Cooley on Constitutional Limitations, are these assessments to be confounded with the exercise of the right of eminent domain. In the case of Sears v. Board of Aldermen, (Mass.) 53 N. E. 138, 43 L. R. A. 36, referred to approvingly in the case of Arnold v. Knoxville, 115 Tenn., 195, it was said:

"While this assessment must be founded upon benefits, the courts have generally recognized the difficulty, and in many cases the impracticability of attempting to estimate benefits to estates one by one, without some rule or principle of general application which will make the assessment reasonable and proportional according to benefits. Accordingly the determination of such a rule or principle by the legislature itself, or by a

tribunal appointed by the legislature to make the assessment, has commonly been upheld by the courts. If, however, its effect plainly is to make an assessment upon any estate substantially in excess of the benefit received, it is set aside.''

As indicated, we think in the statute quoted the legislature has undertaken to fix the amount as not to exceed fifty percent of the assessed value of said lot for municipal taxes for the current year, but this we think does not limit the value to the naked lot, where such lot contains improvements, which under general construction is constituted a part of such lot. This is so not only by reason of such general construction, but also by reason of the express direction of the law in assessment for municipal taxes. Section One, Article Seven of the charter of the City of Maryville, is as follows:

"That the assessment of the property of the corporation for taxes, for corporation purposes shall be based upon the assessment made by Blount county on the same property, and the Recorder shall make out his tax books from the District or Districts Assessors' book; but the authority to assess any property subject, but not assessed by the District Assessor, is given to the Recorder of the corporation, the whole assessment to be under the ·direction of the Board of Mayor and Aldermen, and said taxes shall be turned over to the Recorder for collection on the first Monday of September of each year, and he shall be charged with the gross amount of said taxes; and on settlement with the Board for same, the countersigned orders and his sworn delinquent tax list shall be his vouchers for same, and for which he shall have credit on his quarterly and annual settlements with the Board.

Section 775 of Shannon's Code provides how real estate in this state shall be assessed for taxes, as follows:

"In assessing real estate, the following shall be ·shown: (1) the description of the property; (2) the name of the true owner or owners, if known; (3) the actual cash value of the land or lot, including the improvements, and also all interests in real estate or improvements thereon 'assessable as under Section 774, sub-section 5; and (4) the actual cash value of mills, gins, manufactories, distilleries, breweries, foundries, and other buildings, for similar purposes.''

During the course of the trial petitioner sought to show the amount of the levy and the manner of its assessment on the particular property by the county for the year 1921, because of the provision in rela· tion thereto of Section One, Article Seven of the charter of Maryville as above quoted. This was objected to, and the evidence or certified copy of such assessment excluded. We think the evidence was competent to be considered, as the charter required that assessment of the property of the corporation for taxes for corporation purposes shall

be based upon the assessment made by Blount county on the same property. It was also required that the recorder make out the tax books from the district or district assessor's book, and he was only authorized to independently assess such property as had escaped assessment, and this assessment for county purposes fixed the value as controlling for municipal purposes. Had the value therefore as fixed by the board exceeded that as fixed by the assessor, it would have been evidence to show the invalid character of the municipal assessment, and it was therefore competent. But in as much as the municipal assessment was introduced and shown not to exceed that fixed by the county, it becomes immaterial as to what value the county placed upon it, or the manner adopted in arriving at that valuation. The value of the property as fixed by the assessment for municipal purposes was $3600, and it would therefore appear that the amount apportioned to it as its part of the charge for two-thirds of the cost of the improvement did not exceed one-half of this assessed value for municipal purposes. However, in the assessment excluded, the lot, while assessed as one lot for county purposes, was valued at $4800, the naked lot being valued at $750, the improvements at $4050, this was totalled in the assessment as $4800. This we think did not amount to a separate assessment of the lot, which would not have been authorized, but was simply a memorandum of the assessor showing how he had arrived at the value of the lot, with its improvements. It thus appears that the primary source to look to as a maximum limiting the entire amount chargeable was the assessment for municipal purposes, and that this assessment authorized the amount charged against petitioner's property. While it is true that had this amount exceeded the other levy, which limited it, the proof would have been competent in rebuttal, it has thus become unimportant because, if considered, it would not contradict in any way in respect to the particulars claimed, or as contravening the authority of the municipal levy. Petitioner insists that the valuation of the lot separately at $750 was a limitation of the amount to be charged against him. We do not think this tenable, and the third assignment is overruled as immaterial.

Neither was any conventional estimate as to what the improvements would cost made for purposes of fixing bonds, etc., in limitation upon the cost. This amount of the cost was fixed by the unit prices for excavations, material, etc., and depended upon the amount of the work to be performed. Indeed it is claimed that by reason of the work having to be done in weather conducive to softening of the earth, more was required than would otherwise have been needed. But in any event, in the absence of any assignment or proof of fraud which would invalidate the contract under which the improvements were made, none such is proven, nor facts which would have authorized the jury to conclude that there was such fraud. The fifth,

sixth, seventh and eighth assignments relate to no available defenses that might have been urged against the assessment or its confirmation, and they are therefore immaterial, and are overruled.

.It results that the court was not in error in directing a verdict for the city, and his judgment is affirmed, with costs against appellant and his security.

Portrum and Thompson, JJ., concur.