Mayor, etc., of Chattanooga *v.* Geiler.

MAYOR AND ALDERMEN OF CHATTANOOGA *v.* JOHN GEILER.

1. CORPORATIONS, MUNICIPAL. The power of ascertaining and establishing grades of streets may, by ordinance or vote, be vested in the officers or agents of a municipal corporation, and it will be bound by the acts of such officer or agent in pursuance of such authority. Code construed, sections 1392, 1394.

2. SAME. *Measure of damages.* Damages to private property by change of the grade of streets, may be mitigated by reason of benefits common to all property owners by the improvements.

FROM HAMILTON.

Appeal in error from the Circuit Court of Hamilton County. D. C. TREWHITT, J.

H. M. WILTSE for Chattanooga.

H. B. CASE and KEY & RICHMOND for Geiler.

DEADERICK, C. J., delivered the opinion of the court.

In 1881 Geiler sued the Mayor and Aldermen of the

city of Chattanooga, to recover damages done to his lot, No. 63, in the original plan of the city of Chattanooga, and the house thereon, by a change made in the grade of the streets, upon which said house and lot are situated.

The declaration contains two counts. ' The first count charges· that the civil engineer of the city, being applied to by him, under the authority of the Mayor and Aldermen, in 1874, fixed and established the grade on Chestnut and Ninth streets, and surveyed· the lot upon which plaintiff proposed to build, and established the grade of the street and side walk, adjacent thereto, and that in 1874 he expended $5,000· in building upon his lot, conforming to the grade thus established, and that in December, 1880, the grade was changed so as to throw the level of his· floor some three feet lower than before, and below the level of the said streets and sidewalks, making it. inaccessible and subject to inundation, etc. The second count avers that at the time plaintiff built his house, the grade of the streets upon which he built, being· corner of Chestnut and Ninth streets, had long theretofore been established, and that in 1880 the grade was so changed as to throw his first floor below the surface of streets and sidewalks some two feet, whereas, before, it was about one foot above said level, to his damage $3,000.

The defendant below pleaded not guilty, and the statute of limitations of three years.

Verdict for $2,000 was rendered in favor of plaintiff, upon which the court gave judgment, and a new trial

being refused, the defendants below have appealed in error to this Court.

The Referees have recommended an affirmance of the judgment, and plaintiffs in error have filed exceptions to their report.

Our statute provides that "the corporate authorities of any incorporated town or city, when applied to by an owner of real estate within the corporate limits of the same, who desires to improve his lot, or build upon it, shall have the grade of the street or streets, upon which applicant proposes to build or make improvements established; that the applicant may construct his improvements so as to conform to the grade": Act of 1843, Code, sec. 1392.

Section 1393 provides that "said corporate authorities shall pay such applicant the full amount of any damages, he may sustain in consequence of the subsequent change of the grade of such street or streets by said authorities." And section 1394 provides that "said corporate authorities shall also pay to any citizen who has made permanent improvements on his property, situated on a street or streets the grade of which said authorities have neglected to establish, any material damage he may sustain in consequence of any grade which they may subsequently establish."

The first exception of the plaintiff in error to the report of Referees is, that it shows that the action in the first count is founded upon section 1392 of the Code, and there is no evidence to sustain the verdict under said section, that no grade is shown to have been *properly* established prior to the one complained

of, and established by the ordinance of 1880, that no application for a grade followed by neglect to establish it, is shown.

It will be convenient to consider the second exception with the first. It is, that the report shows that the second count of the declaration is founded upon section 1394 of Code, and no fact is shown giving cause of action under that section, as no neglect to establish a grade called for, is shown.

The argument for plaintiff in error is, that the record does not show any ordinance prior to 1879, establishing the grade of Chestnut and Ninth streets, nor is there sufficient legal evidence of any application for the establishment of any grade, nor of neglect to estabish after application. And that these facts can only be established by the production of an ordinance of the board, and that the engineer had no authority to establish grades. The case of *White* v. *Mayor, etc.,* 2 Swan, 364, is relied upon in support of this proposition. That case decides that the corporation of Nashville had no power to give any one or more members of the Board of Aldermen authority to require such citizens as they may designate, to construct foot pavements in front of their lots, and pass over others equally liable to such duty, nor could the corporation itself do it. It is added, the power conferred upon the corporation must be exercised by the persons, upon whom by the act of incorporation, it is conferred, by themselves, or under their express directions, as in other cases of personal confidence and trust. But this case does not hold that the corporation may

not declare that a street shall be graded, and entrust the execution of that work to its engineer. It cannot be supposed that the Legislature, in giving the Mayor and Aldermen the powers enumerated in their charter, intended that they should be held to the personal performance of every duty imposed. From necessity a municipal, as well as other corporations, must discharge many of its functions and duties by officers and agents. It may, by ordinance or vote, clothe its officers or agents with power to act for it, and may bind itself by a contract thus made: 1 Dil. Mun. Corp., sec. 374. But its legislative power it cannot delegate.

The peculiar duty of the city engineer is to ascertain and establish the proper grade of streets, in the city. The Mayor and Aldermen elected him for the performance of this duty, and by an ordinance, passed in 1867, they declared it to be the duty of the city engineer "to establish the lines and grades of all the streets and alleys laid down in the original plat of the city," etc. And again, in 1871, they declare it to be his duty to "accurately survey all the streets within the corporate limits of said city; keep a record of said survey, ascertain the correct grades for each and every street, and report the same to the Board of Mayor and Aldermen of the city," and "deliver all such maps, profiles, surveys, and other papers made by such engineer" to his successor in office.

For the services imposed, certain fees were prescribed, to be paid by the person for whom, or at whose request the service might be rendered.

Again, in 1873, it was ordained that the city engineer shall establish a permanent grade of all the streets, alleys and sidewalks, and shall prepare a map, showing the grade of said streets, alleys and sidewalks, "which shall be kept for reference in the office of said engineer."

No ordinance, previous to this time (1873) is exhibited, showing that the Mayor and Aldermen had attempted by their own corporate action to designate or establish the grades of streets and alleys; but all of them seem to have committed that duty to the engineer, and directed that the maps, profiles, etc., that he might make under said several ordinances, should be kept in his office for the public use, and fees are prescribed to which the engineer should be entitled for his services, to be paid by the citizens for whom he might make surveys, plats, etc. Robt. Hooke was city engineer from December, 1872, to December, 1875, was born in Chattanooga, and was familiar with its streets and buildings, and testifies that the grade of Chestnut and Ninth streets was established prior to 1874. A grade stone was there erected and marked, and a profile in his office of the grade turned over to his successor. Hooke gave Geiler, on his application, the grades, and a certificate of them, and was paid his fee, and his house was built in conformity thereto. Deitz succeeded Hooke in 1875, and continued in office four years, and says the profile was found in his office, and is the grade which was established, and Geiler's building conformed to it.

The testimony of Hooke and Deitz, as to the grade, was objected to, but admitted. It is by other witnesses shown that this was the recognized grade for years before Geiler built. The streets were worked and kept in order on this grade. And in 1879, this grade was adopted by ordinance, and until 1881, it so remained until a radical change of it was made. The evidence objected to was properly admitted. It was proof of an existing, recognized fact. The witnesses did not pretend to say that the grade was established by ordinance; but Deitz does exhibit the profile, which Hooke testified he left in the office, which shows the grade as then existing, and which was established by the survey of the engineer as directed by previous ordinances which are exhibited. And it appears that prior to 1871 grades had been established, for in that year, in an ordinance defining the duties of the engineer, he is instructed to have streets and sidewalks laid "according to the grade and slope heretofore ordered by the Board of Mayor and Aldermen."

Upon these facts we are satisfied that the grade existed in 1874, recognized by the Board of Mayor and Aldermen and its engineers and the public, although no ordinance has been given in evidence of the fact of its formal establishment.

In a case in 3 Baxt., 338, this court held that a liberal construction should be given to the statutes in favor of the right of the citizen to recover damages to his property by the city authorities; notwithstanding that case did not fall literally within the provisions of the statute.

We are of opinion that the exceptions first and second are not well taken. The third exception reaches to a supposed error in the charge of the court that the grade of a street might be established by the engineer.

The argument is that the grade can only be established by ordinance. But the act of 1843 directs that the corporation "shall have the grade established." To this end we think it may order their engineer to do it. This has been done, and in addition, as before stated, they say in 1871, that the grades had been fixed theretofore, and this exception is not well taken. The fourth exception is that the judge charged sections 1392 and 1394 provide different grounds of action and are independent of each other. There is no error in this, as they do so provide. The fifth exception as to admission of parol grades, has been disposed of, in effect, in the disposition of the first, second and third exceptions, and as the evidence of facts shown was admissible. The sixth exception is that the judge erred in telling the jury that they could mitigate the damages by reason of benefits common to all property owners by the improvements. There was no error in this. The charge was correct: 2 Dil. Corp., sec. 487. The seventh exception is that the Commission of Referees should have noted the fact that the judge assumed certain ordinances read as proved, etc.

There was no error in stating that the ordinances were read, and that no formal ordinance was necessary to establish a grade under certain circumstances.

The eighth exception is that the defendant in error might have obviated the difficulty complained of in part, by reasonable diligence. · This does not appear. The injury inflicted was serious, and could not be remedied except at very heavy expense. The ninth exception is as to the location of a grade stone, about which there is sufficient evidence to support the theory of defendant in error. The tenth exception was taken to the action of the court in permitting the recalling of the witness, White, and his further examinationn, and the refusal to allow plaintiff in error to call G. H. Jarnagin "to explain certain matters" brought out by White. Geiler had not finished the examination of his witnesses, and it was within the discretion of the court, to allow the witness to be called. It would have been irregular to allow defendant below to introduce contradictory or explanatory evidence of the testimony of one of plaintiff's witnesses at the time. It also appears defendant examined said Jarnagin and he had, or might have had, the benefit of any competent, contradictory or explanatory testimony of this witness. The eleventh and last exception is that the damages are excessive. We do not think so. The evidence fully warrants the amount found.

Upon the whole we think there is no error in the record, and the report of the Referees will be confirmed, and the judgment of the circuit court affirmed, with costs.