CITY OF ROCKWOOD *v.* JOHN A. RODGERS.*

(*Knoxville.* September Term, 1926.)

Opinion filed, November 20, 1926.

1. CONSTITUTIONAL LAW. General assembly. Special session. Acts of.

On Legislature being convened, as provided by the Constitution (Art. 3, sec. 9), inhibited to "enter on no legislative business except that for which they were specifically called together," the presumption is in favor of the constitutionality of an Act, and should be held within the call if this can be done by any reasonable construction. (Post, p. 641.)

Citing: State ex rel. v. Woollen, 126 Tenn., 456.

2. SAME. Same. Same. Act held within the call.

Where one of the purposes for which a special session is called "To provide a general enabling act, authorizing towns and cities to make improvements on the abutting assessment plan," and an act is passed, general in its application, excepting municipalities of the smallest class, and excluding those of the largest class, held a general enabling act within the meaning of the call. (Post, p. 641.)

Citing: Acts 1913, ch. 18, 1st. ex. ses.; Constitution, art. 3, sec. 9.

3. MUNICIPAL CORPORATION. State control. Different provisions for local improvements.

The State generally has absolute control over the cities and towns within its borders and may provide for the same municipalities, distinctly different plans for local or street purposes; as by Acts (1913, ch. 18, 1st. ex. ses.), giving authority to initiate and construct, etc., and cost made a general obligation, and by an Act (Private Acts 1917, ch. 374) giving authority to create im-

---

*Rule as to adoption of construction sustaining constitutionality of statute, see 25 R. C. L. 1000; 3 R. C. L. Supp. 1437; 4 R. C. L. Supp. 1615; 5 R. C. L. Supp. 1358; 6 R. C. L. Supp. 1498.

provement district upon petition, to construct at the joint expense of the municipality and abutting owners, limiting the extent of an improvement. The assessments in either instance to be measured by the benefit conferred upon such property, or reasonably anticipated. (Post, p. 642.)

Citing: Private Acts 1917, ch. 374; Private Acts 1921, ch. 480.

Citing: Arnold v. Knoxville, 115 Tenn., 195-214; In Re Bonds of the Madera Irrigation District (Cal.), 28 Pac., 272; 14 L. R. A., 767; 27 Am. St. Rep., 106.

**4. STATUTES. Repeal by implication. Not favored.**

Where two statutes are not inconsistent and repugnant, they may both be enforced within the territorial limits of a single municipality. (Post, p. 646.)

---

*Headnotes 1. Constitutional Law, 12 C. J., section 221; 2. Statutes, 36 Cyc., pp. 944, 945; 3. Statutes, 36 Cyc., p. 945; 4. Statutes, 36 Cyc., pp. 1074, 1093; 5. Municipal Corporations, 28 Cyc., pp. 1129, 1156; 6. Municipal Corporations, 28 Cyc., p. 1167; 7. Municipal Corporations, 28 Cyc., p. 1105; 8. Municipal Corporations, 28 Cyc., p. 1105; 9. Municipal Corporations, 28 Cyc., p. 1093.

## FROM ROANE.

Appeal from Chancery of Roane County.—HON. J. H. WALLACE, Chancellor.

J. RALPH TEDDER, for appellant.

FRED G. HAGGARD, for appellee.

MR. JUSTICE SWIGGART delivered the opinion of the Court.

The city of Rockwood improved certain of its streets in accord with the method authorized by chapter 18 of

the Public Acts of 1913 (First Extra Session), and filed a bill in this cause to enforce an assessment on abutting property owned by the defendant, John A. Rodgers. The chancellor dismissed the bill on demurrer, and the city of Rockwood appealed.

The Act of 1913, chapter 18 of the First Extra Session of the General Assembly of that year, is a general act authorizing municipalities to construct and improve streets and highways, and to assess a portion of the costs thereof upon property abutting upon such streets or highways. By its terms it applies to all municipal corporations in the State having a population of not less than 2,075 nor more than 35,000, according to the Federal Census of 1910, or any subsequent Federal Census. It does not apply to the four largest cities of the State, nor to the incorporated towns having a population less than 2,075, this exclusion having been effected by the census reference above noted.

Rodgers assails the constitutionality of this statute on the ground that, having been enacted at the special session of the General Assembly, it was not included in the call issued by the governor, by which the General Assembly was convened in special session. This contention is made because of the provisions of article 3, section 9, of the Constitution of the State, which provides for the convening of the General Assembly in special session by proclamation of the governor in the following language:

"He may, on extraordinary occasions, convene the general assembly by proclamation, in which he shall state specifically the purposes for which they are to convene; but they shall enter on no legislative business except that for which they were specifically called together."

The proclamation of the governor, by which the first extra session of 1913 was convened, stated one of the purposes for which the special session was called as follows:

"No. 46.   To provide a general enabling act authorizing towns and cities to make improvements on the abutting assessment plan."

In the case of *State ex rel.* v. *Woollen,* 128 Tenn., 456, 487, the rule by which the language of the governor's proclamation must be tested, to determine whether the legislation under consideration was included therein, is stated as follows:

"It is agreed, so far as any of the cases speak on the matter, and this view is undoubtedly sound, that the presumption is always in favor of the constitutionality of an act, and that any piece of legislation so under consideration should be held within the call, if it can be done by any reasonable construction."

The general subject of legislation to be considered by the General Assembly in the special session was stated by the governor as, "the authorization of towns and cities to make improvements on the abutting assessment plan." By the words, "a general enabling act," we think the governor intended to preclude the General Assembly from enacting special laws on this subject for the benefit of particular cities or towns, and to confine the General Assembly to the enactment of a single act, which should not be special in the sense just stated.  The General Assembly enacted a general law on this subject, universal in its application, except that cities and towns of the smallest class and cities and towns of the largest class were excluded.  We think that such an act was a general

enabling act within the meaning of the governor's proc-
lamation.

The chancellor reached the same conclusion on this
question, and the record was filed for writ of error by
the defendant Rodgers, to review the holding of the chan-
cellor that the Act of 1913 was constitutional. The as-
signment of error of the defendant, in support of his
writ of error, will accordingly be overruled.

The principal question made by the demurrer, and the
question which is presented by the complainant's appeal,
is whether the Act of 1913 was impliedly repealed, in so
far as the Town of Rockwood is concerned, by the provi-
sions of chapter 374 of the Private Acts of 1917, and by
chapter 480 of the Private Acts of 1921.

Chapter 374 of the Private Acts of 1917 is an act
providing for the creation of "improvement districts"
in cities and towns of the State having a population of
not less than 3650 and not more than 3850, according to
the Federal Census of 1910, or any subsequent Federal
Census. It appears from the marginal reference con-
tained in the printed acts, and from statements on the
briefs of counsel in this cause, that this act applies only
to the towns of Rockwood and Lebanon; and from the
fact that it was introduced in the General Assembly by
the representative from Roane county, it is argued that
it was a special act for the Town of Rockwood, and, in
effect, an amendment to its charter.

The Act of 1921, above mentioned, is expressly an
amendment to the charter of the Town of Rockwood, by
which a new plan of municipal government for the town
was provided.

It is the contention of the defendant that chapter 374 of the Private Acts of 1917 provides a complete system whereby the Town of Rockwood is authorized to construct and improve its streets and highways, on account of which the earlier law or statute, on the same subject, is repealed by implication; and it is further contended that the Acts of 1913 and 1917 are so repugnant and inconsistent that they cannot stand or be enforced together, so that the Act of 1917 must be held to have repealed the Act of 1913 by implication, in so far as the Town of Rockwood is concerned.

The Act of 1913 authorizes municipalities within its application to construct or improve any street, highway or other public place within their boundaries, and to cause not less than two-thirds of the cost or expense of such work or improvements to be assessed against the property abutting or adjacent to the street, highway or other public place improved. The apportionment of the cost is therein required to be made according to the frontage of each lot or parcel of land on the improved street or highway, with the limitation that the total amount of any such assessment or apportionment on any lot shall not exceed one-half of the assessed value of such lot for municipal taxes, the excess to be paid by the city or town. A method is prescribed in the act whereby the costs of improving the street intersections is to be apportioned among the lots or parcels of real estate located within a half a block of such street intersection.

No action or initiative on the part of the owners of real estate, located on or near the streets or highways to be improved, is necessary to confer upon the city government authority to proceed under the Act of 1913, al-

though provision is made for notice and hearing in order that property owners objecting to a proposed improvement may have an opportunity to appear before the legislative body of the city or town and protest against the making of the improvement or the method of improvement contemplated by the legislative council.

The Act of 1913 authorizes the city or town, proceeding under its provisions, to anticipate the proceeds of the special assessments made against abutting property by issuing interest-bearing bonds, which bonds, when issued, are the absolute and general obligations of the municipality.

Section 25 of the Acts of 1913 is as follows:

"That the provisions of this Act shall in no manner repeal, modify, or interfere with the operation of any special assessment or abutting property law or laws heretofore enacted for the benefit of any particular city or cities in the State; provided, however, that the provisions of this Act shall be additional and supplemental to the powers conferred by such Acts, and the cities to which the provisions of this Act are applicable may take advantage of any of the rights, powers, and authority conferred by this Act in addition to those which such cities now possess."

The Act of 1917 provides for the improvement of streets and highways, and their construction, by the organization within the municipality of improvement districts. The plan is extended to the "laying of permanent sewers," which is not within the provisions of the Act of 1913. This act provides that, upon petition duly signed by fifty-one per cent of the landowners affected, "it shall be lawful" for the legislative body of the cities

or towns within the application of the act to provide for the improvement of any street or highway, and to provide for the making of special levies or assessments upon the lands abutting on or, in the case of sewers, adjacent to the street or highway to be improved. Before the legislative council can proceed under this act the petition of the property owners must be filed, in which petition the limits of the improvement district to be created must be set out, as well as the character of the improvements desired. Upon the filing of such a petition it lies within the discretion of the municipal council or legislative body to grant or reject the petition. If the petition is granted and the improvement district created, and the improvements are constructed, the city or town is required to pay and bear the cost of all grading necessary to bring the street or highway to a permanent grade, and a special tax levy for such purpose on all the taxable property within the city or town is authorized for such purpose. Of the balance of the cost of such improvements the act authorizes two-thirds to be assessed upon the abutting real estate, the other one-third to be paid out of the general or special funds of the city or town. When improvements are made under this act the city or town is also required to pay all the cost of the improvements at street intersections, and no part of that cost may be assessed upon the abutting property. The assessments on abutting property must be made "with equality and uniformity and according to the value thereof without including in such value the cost of improvements thereon;" and it is further provided that the aggregate or total assessment upon any lot or parcel of land shall not exceed twenty-five per cent of the actual cash value thereof, not includ-

ing the improvements on such lot or parcel of land, the excess to be paid by the city or town. Under this act bonds may also be issued by the city or town in anticipation of the proceeds of the special assessment, but it is provided that any such bonds may be paid "solely out of the moneys realized from the special levies or assessments," etc.

From the foregoing reference to the basic features of each of the two acts under consideration it will be observed that two distinctly different methods for the construction of street improvements are provided. By the Act of 1913 the city or town within its application is authorized to initiate and construct street improvements and to assess two-thirds of the costs thereof against abutting property, including the expense of grading and the cost of the improvements at street intersections, all assessments to be made against the abutting property according to its frontage on the street improved or constructed. The maximum limit of the assessment against any lot or parcel of land is fifty per cent of the assessed value. If bonds are issued to anticipate the proceeds of the assessments, such bonds are the absolute and general obligations of the city or town.

By the provisions of the Act of 1917 the city or town is powerless to initiate any street construction or improvement, and assess any part of the cost upon abutting property, unless the legislative body of the city or town is petitioned so to do by at least fifty-one per cent of the owners of the property to be assessed. If such a petition is filed with the legislative body of the city or town, and if the petition is granted, the improvements must be constructed through the organization of improvement

districts. The city or town must bear all of the expense of grading the street or highway to be improved, and must bear all of the expense of the improvement at street intersections. That part of the cost of the improvement which may be assessed against abutting property must be apportioned according to the value of such abutting property, not including the improvements thereon, and no assessment may be made upon any lot or parcel of real estate which exceeds twenty-five per cent of the value of the property assessed, not including the improvements thereon.

We have not found in either statute any language expressly indicating a legislative intention that either method of street improvement should be exclusive of any other method in any particular city or town. So far as the Act of 1913 is concerned, the contrary is expressly declared by the provisions of section 25, hereinabove quoted. The language of the Act of 1917 is that the procedure therein authorized "shall be lawful." There is no express language in either act providing that the street improvements authorized thereby shall be constructed in the method described therein and in no other method.

There being no express provision in the Act of 1917 indicating a legislative intention that the method of street improvement prescribed therein should be exclusive, we cannot assent to the proposition that the Act of 1917 works a repeal of the Act of 1913, in so far as the Town of Rockwood is concerned, on the theory that the Act of 1917 purports to cover the entire subject of street improvement by the special assessment method in the towns to which the statute is applicable. Manifestly, the Act

of 1917 does not cover the entire field. It covers only the improvement of streets located within improvement districts which the city government is petitioned to create, and does not cover the improvement of the streets of the city or town which are not included in improvement districts so created. The power of the city government to improve streets by the special assessment method, which are not included in improvement districts so created, is not covered by the Act of 1917, and there is no language to be found in the Act of 1917 denying to the city government the power to improve streets by the special assessment method when such streets are not included within an improvement district authorized by the act. The Act of 1913 does confer upon the city government the power to construct and improve streets throughout the limits of the city, and, therefore, covers a field of municipal activity which is not included in the Act of 1917.

At the time the Act of 1913 was enacted it was manifestly the legislative view that a city government may be vested with discretionary power to authorize the improvement of different streets within the city by different methods of procedure and different methods of apportioning the cost among the owners of abutting property. It is so declared in section 25 of the Act of 1913, wherein it is expressly provided that the method of street improvement authorized in that act should be additional and supplemental to any other method authorized by any special act or charter provision applying to any particular city or cities within the application of the Act of 1913. While this language does not wholly control the decision of the question now under consideration, because the Act of 1917 was enacted subsequently, it is strongly per-

suasive. It declares the legislative intention that if the legislative body of any city or town within the application of the Act of 1913 should find the special statutes, or charter provisions, applicable to such city or town inadequate to meet the municipal needs in the matter of street improvement, such city or town should also have the right to improve and construct its streets under the method provided in the general Act of 1913.

We are unable to find any reason why the benefits of the Act of 1913 should not be extended to the Town of Rockwood on account of the fact that the special statute was enacted subsequently, when the subsequent act does not contain any language indicating a legislative intent that the method of street improvement therein authorized should be exclusive.

Nor do we find that the special provisions of the two statutes are so inconsistent and repugnant that both may not be enforced and applied within the territorial limits of a single town or city. Confusion in the application of the two statutes to a single street, or to a street intersection, may be avoided by the action of the legislative body of the city or town in so limiting the extent of an improvement district as to prevent such district from any street or street intersection improved or constructed under the provisions of the Act of 1913, and if confusion results it will be the fault of the legislative body of the city or town, which cannot be urged against the validity of either statute.

It appears, however, that if both acts are upheld, and an improvement district is created under the Act of 1917, the owners of abutting property within such district cannot be assessed with any part of the cost of grading, nor

with any part of the cost of surfacing or paving street intersections, or portions of streets opposite the mouth of an alley, and the total assessment against any such property owner may not exceed twenty-five per cent of the value of his property; while the owners of property abutting a street improved under the Act of 1913 may be assessed with a portion of the cost of grading and of surfacing or paving street intersections, and of that portion of the street opposite an alley, with the total assessment limited to one-half the value of the property assessed. Thus, the owners of property abutting a street improved under the Act of 1913 may be required to bear a greater proportionate share of the cost of improving the street than the owner of property abutting a street within an improvement district created under the Act of 1917.

If the legislature is without power to vest the legislative body of a city with power to pursue both such methods of street improvement, with the resultant lack of uniformity in assessments for different improvements within the city, then we must hold that the Act of 1917 is so repugnant to the Act of 1913 that an implied repeal of the Act of 1913 results, since both could not be administered together.

In *Arnold* v. *Knoxville,* 115 Tenn., 195, 214, this court said:

"It is well to remark that the power to assess is not unrestricted as to amount; but must be measured by the benefits received, or reasonably anticipated, and the property owner must have an opportunity to be heard in regard to the assessment."

Whether the assessment be made under the Act of 1913, or under the Act of 1917, it must be measured by the benefit conferred upon the property assessed, or reasonably anticipated; and it is upon the theory that the property assessed will receive benefits equal to or exceeding the amount of the assessment that either statute can be constitutionally enforced. We must, therefore, assume that whether an assessment be under the one or the other statute, it will not exceed the special benefit received by the property assessed.

In *Arnold* v. *Knoxville,* supra, at page 219, this court quoted from *In Re Bonds of the Madera Irrigation District* (Cal.), 28 Pac., 272, 14 L. R. A., 767, 27 Am. St. Rep., 106, as follows:

"It is equally clear that those clauses which provide that taxation shall be equal and uniform throughout the State and prescribe the mode of assessment, and the persons by whom it shall be made, and that all property shall be taxed, have no application to assessments levied for local improvements."

It will not be contended that authority vested in a city or town to improve or construct streets and assess a portion, or even all the cost against abutting property, and the application of such power to some of the streets, will prevent the city or town from cnstructing or improving other streets, and paying the entire expense or cost thereof out of its general revenues.

It follows that every statute conferring discretionary power upon a city or town to improve its streets, and assess all or a part of the cost on abutting property, will produce inequality between the owners of property abutting on streets improved by the city at its own cost and

the owners of property abutting on streets improved by the special assessment method.

In the case of *Knoxville Ice & Cold Storage Company* v. *City of Knoxville,* 284 S. W., 866, 153 Tenn., ——, this court held that authority in the charter of the city of Knoxville to require railroad companies to construct viaducts over their tracks at street crossings, at the entire expense of the railroad companies, did not deprive the city of its inherent power to construct such a viaduct at its own expense, or to share the cost of such a viaduct with a railroad company whenever the city council, in its discretion, should deem it proper, just and equitable for it to do so. Clearly, the existence of this discretion implies the power in the city to adopt one course at one crossing and another course at another crossing, according to the city's determination of what would be just and equitable in each particular instance.

So, we think that the city legislative body be vested with the discretion to improve some of its streets at its own expense and to improve other streets at the joint expense of the city and the abutting property owners; and no reason exists why the city of Rockwood may not be vested with power to improve some of its streets under the Act of 1913, and at the same time improve other streets under the improvement district plan of the Act of 1917, the city bearing a larger proportion of the cost under the latter plan than under the former. In each instance, the property owner is not required to pay more than the special benefits conferred upon him, or reasonably anticipated. The legislature evidently deemed it proper that the city government have the power to determine which method it will pursue on a given street,

according to the financial condition of the city government, and the sense of its legislative body as to which method will be more just and equitable both to the city and to the property owner.

It results that we hold that the Act of 1913 is not repealed, as to the town of Rockwood, by the Act of 1917.

Chapter 480 of the Private Acts of 1921 amended the charter of the Town of Rockwood, substituting a commission form of government in lieu of the board of mayor and aldermen previously existing. This amendment undertook to place certain limitations on the taxing power of the city government, but provided that this limitation should not interfere with the enforcement of the provisions of the improvement district Act of 1917, referring to said act as the "abutting property law for Rockwood." The proviso also refers to the "general laws applicable thereto," and it is contended by the complainant that this latter phrase is a recognition of the continued application of the general Act of 1913 to the city of Rockwood. Whether this be the correct interpretation of the quoted phrase or not, we do not think it was necessary that the general Act of 1913 be referred to in the charter amendment in order to prevent its repeal by implication. Since the improvement district Act of 1917 was considered a special act applicable to the city of Rockwood, and the charter amendment contained limitations on the taxing power in apparent conflict with it, the reason for the express reference to the Act of 1917, in order to prevent its implied repeal, is apparent, but we do not think this reason existed with reference to the general Act of 1913, which, by its express terms, purported to confer upon cities and towns within the designated population limits

powers supplemental to and in addition to those conferred by their charters.

The decree of the chancellor sustaining the demurrer of the defendant will be reversed and the cause remanded to the chancery court of Roane county for further proceedings.

The costs of the appeal and of the writ of error will be paid by the defendant.