CITY OF ROCKWOOD *v.* C., N. O. & T. P. RY. Co.*

(*Knoxville.* September Term, 1929.)

Opinion filed December 9, 1929.

---

*On liability of railroad right of way to assessment for local improvements, see Annotation in 12 L. R. A. (N. S.), 112; 40, L. R. A. (N. S.), 935; 37 A. L. R., 219; 25 R. C. L., 118; 4 R. C. L. Supp., 1571; 5 R. C. L. Supp., 1312; 6 R. C. L. Supp., 1452; 7 R. C. L. Supp., 836; Assessments for improvements by front foot rule, see annotation in 28 L. R. A. (N. S.), 1124; L. R. A. 1917D, 372; 37 A. L. R., 237; 25 R. C. L., 144; 4 R. C. L. Supp., 1573; 6 R. C. L. Supp., 1457.

32

J. Ralph Tedder and Miller, Miller & Martin, for plaintiff in error.

H. M. Carr and J. F. Evans, for defendant in error.

Mr. Justice McKinney delivered the opinion of the Court.

This case involves the legality of special assessments for paving purposes, adjudged by the City of Rockwood, against the Railway Company, pursuant to chapter 18, Acts of 1913, First Extra Session, as amended by chapter 526, Private Acts of 1921. The City created two improvement districts for paving Strang Street and Rathburn Street, respectively.

The Railway Company has certain "acreage property," consisting of four parcels of land, fronting on Rathburn Street improvement district. It also has a right of way crossing both improvement districts, with a frontage of 200 feet on each side of Strang Street and on each side of Rathburn Street. Where the right of way crosses Strang Street it is occupied only by tracks for the passage of trains; where it crosses Rathburn Street it is occupied by a freight depot, stock pens, and switch tracks.

The evidence shows that the right of way at Strang Street was not benefited by the improvement, so that no further reference will be made to that branch of the case.

The Board of Commissioners assessed both the "acreage property" and the right of way for the proportion-

ate cost of the improvement fixed by the statute. Upon appeal the circuit court held the assessments invalid, for the reason that the Board of Commissioners had delegated the duty of apportioning the cost of the improvement to the city engineer. The Court of Appeals affirmed the judgment of the circuit court, with a modification as to the lien on the "acreage property," not necessary to detail here. The case was brought to this court upon a petition for writ of *certiorari* which has heretofore been granted and argument had.

The statute involved is an exceedingly lengthy one. It provides that the legislative body of certain municipalities may create improvement districts for paving streets, two-thirds of the cost of which shall be assessed to the property abutting thereon upon the "front foot plan;" that this shall only be done by ordinance which shall describe the nature and extent of the work, the character of materials to be used, the terminal points of the proposed improvement, the streets on which such improvements are to be made, and shall provide for full details, drawings, plans, specifications, surveys of the work, and estimates which shall be filed in the office of the city engineer for inspection by those interested. When this is done, notice, by publications, is to be given the property holders within the district of the proposed improvement, and they are afforded an opportunity to appear and oppose the project. If, after protests are heard, the Board decides to make the improvement, the act details the method of having the work done.

It is then provided that, upon the completion of the improvement, the Board shall apportion the costs thereof, on the basis heretofore stated, with a proviso that

no lot or parcel of land shall be charged with a sum in excess of one-half of its assessed value for taxes.

Section 6 of the Act provides as follows:

"That when said legislative body shall have completed such apportionment, the City Clerk, or such person as may be designated by the legislative body, of said city shall thereupon publish a notice that said assessment list has been completed, and that, on a day named, which shall be not less than ten days after the date of publication of said notice, the City Council will consider any and all objections to said apportionment that have been filed in the office of said City Clerk or person designated. Said notice shall further recite that said lists are in the office of said City Clerk or person designated, and may be inspected within business hours and during the time specified by any one interested. Said notice shall also state the general character of the improvement and the terminal points thereof. All persons whose property it is proposed to assess for the cost of said improvement may at any time on or before the date named in such notice, and before said meeting of said legislative body, file in writing with the City Clerk or person designated any objections of defense to the proposed assessment or to the amount thereof. On the date named in said notice, or at any day to which said meeting may be adjourned or to which consideration of said assessments and the objections thereto may be postponed, said legislative body shall hear and consider said assessment and objections thereto, and, after so doing, shall confirm, modify, or set aside said assessments as shall be deemed right and proper. If no objection to the *pro rata* or the amount thereof is filed, or if the property owners fail to appear in person or

by attorney and insist upon the same, the assessment shall be confirmed and made final; and property owners who do not file objection in writing or protest against such assessment shall be held to have consented to the same and forever barred to attack the regularity, validity, or legality of such assessment. Such confirmation and final action by said legislative body shall be done at a single meeting of said body; and it is hereby declared that the provisions of the charters of said cities in reference to the passage of ordinances shall not be applicable to the action of said bodies in levying such assessments as aforesaid.''

The Act further provides that after the assessments shall have been levied they shall be entered in a ''special Assessment Book,'' and also provides that these entries shall contain the name of the owner, a full description of the property assessed, the amount of the assessment, and other necessary information.

Provision is made for an appeal from the Board of Commissioners to the circuit court.

Section 11 of the Act is as follows:

''That any failure on the part of any municipality to comply with any of the provisions of this Act, and any failure in the existence or performance of any of the conditions precedent to the issuance of any bonds under this Act, shall not affect the validity of such bonds or of the assessment made under this Act, but the same shall be in all respects valid and binding.''

From the foregoing, it will be noted that the procedure is a simple one, and that the property owner is afforded ample protection.

The ordinance, plans, specifications, etc., afford those affected full information as to the proposed improve-

ment and what portion of the cost they will have to pay. They are given the right to oppose the undertaking and to be heard by the Board.

After the work is completed, and the apportionment list is filed, the property owners are given notice of its filing, and, with said list, plans, drawings, etc., which are available to them, it becomes a mere matter of mathematics to determine whether any error has been made in the computation. If not satisfied with the apportionment, they can protest and have a hearing before the Board, and if not satisfied with their decision, they can appeal to the circuit court.

With respect to the creation of the district the statute contemplates that the proceedings shall be by ordinance which shall set forth the proposed improvement in great detail; but after that is done the proceedings are to be informal; the usual charter provisions in reference to the passage of ordinances are not to apply; and any failure to conform to its conditions shall not affect the validity of the assessment.

Section 3 of the original ordinance, among other things, provides as follows:

"Be it further ordained that two-thirds of the entire costs of said improvements shall be levied and assessed against the property abutting on said street according to the frontage of the lot or abutting property and the assessment shall be and is hereby declared as a lien upon said property to secure the payment of its *pro rata* share of the cost of said work and improvement. Said assessments shall be paid as provided in Section 7, Chapter 18, Acts of the General Assembly of Tennessee for the year 1913 (First Extra Session). The remaining one-third of such cost shall be paid by the

City of Rockwood, Tennessee, as is designated in said Act, or out of funds realized from the sale of the General Improvement Bonds, authorized to be issued under Section 21, Chapter 18, Acts of the General Assembly of Tennessee, for the year 1913 (First Extra Session)."

After letting the contract, the only thing to be done is to apportion the cost of the improvement. The basis of the apportionment is fixed, the cost of the improvement is ascertained, the plans and drawings furnish the necessary information as to the footage of each piece of property, and there is nothing left but to compute the amount of each assessment, which is a ministerial act involving neither the exercise of judgment nor discretion. Reducing the amount of the apportionment to one-half of the taxable value of the property is, likewise, a matter of mathematics.

The general rule against delegation by municipal bodies does not forbid the delegation of ministerial, executive, or administrative functions to subordinate officials. 43 Corpus Juris, 242; *Lotspeich* v. *Morristown,* 141 Tenn., 121; *Chattanooga* v. *Geiler,* 81 Tenn., 614; *Avis* v. *Allen,* 83 W. Va., 798; *Harrisburg* v. *Shepler,* 190 Penn. St., 374; *Heman Const. Co.* v. *Levy,* 179 Mo., 455.

In *Avis* v. *Allen, supra,* it was said:

"And so we say here that the ascertainment of the amount to be charged against the defendant involved nothing but a ministerial act, a mere matter of calculation, and it was not necessary in order to recover in this case, that it be proved that the Council had made any record thereof."

In *Chattanooga* v. *Geiler, supra,* it was insisted that the power conferred upon the Mayor and Aldermen of

Nashville to establish grades of streets could not be delegated to an engineer. The court held that it could, and said:

"It cannot be supposed that the Legislature, in giving the Mayor and Aldermen the powers enumerated in their charter, intended that they should be held to the personal performance of every duty imposed. From necessity a municipal, as well as other corporations, must discharge many of its functions and duties by officers and agents."

Later in the opinion it was said:

"The argument is that the grade can only be established by ordinance. But the Act of 1843 directs that the corporation 'shall have the grade established.' To this end we think it may order their engineer to do it."

Certainly it requires more judgment and discretion for an engineer to establish the grade of a street than it does to apportion the cost of an improvement when all of the data is before him. It seems to us that the engineer is the proper person to make the computation. He is better qualified for such work than the average town board.

We have been referred to no authority holding to the contrary. Counsel have cited several cases which are not in point, but deal with legislative functions of municipal bodies which, of course, cannot be delegated.

It is further contended that there is no formal resolution or ordinance levying these assessments. In our opinion, the Legislature did not so intend, further than is provided in the original ordinance, which we have quoted above.

In 44 Corpus Juris, 615, it is said:

"Where an ordinance has been passed providing for the making of a certain improvement and the assessment of two-thirds of the cost thereof against the abutting property owners, in the manner provided by statute, there is no necessity for another ordinance after the work is completed to determine the amount of the cost chargeable to each piece of property."

In *City of Charlton* v. *Holliday*, 60 Iowa, 395, we find the following statement:

"It is said, the statute authorizes municipal corporations by 'general ordinance to prescribe the mode in which the charge' against or liability of the owner of the lot or land 'shall be assessed and determined.' Code, par. 478. The ordinance does provide the mode of assessing the cost of the sidewalk on the owner of the property. But this was not done, and hence it is said the city cannot recover. We think this is an informality which, under the statute, should be disregarded. *City of Burlington* v. *Quick*, 47 Iowa, 222. After the walk was constructed, the cost was ascertained, and it is conceded that the amount is correct, and that the walk was constructed as required by the ordinance. The defendant was notified of the amount due, and an opportunity to pay was given him, which he declined. Under these circumstances, the formal assessment of the cost of the walk against the defendant is not an essential requisite to a recovery."

The Supreme Court of Illinois held to the same effect in the case of *Green* v. *Springfield*, 130 Ill., 515.

In the case under consideration, after the apportionment list and other data had been filed, and notice given, the Railway Company filed its protest in writing, and a time was set for hearing same. The Railway Com-

pany was represented at the hearing by counsel, the primary contention being that the Act was unconstitutional and that it was repealed by chapter 374, Private Acts of 1917. These questions were subsequently decided adversely to the contention of the Railway Company in *City of Rockwood* v. *Rodgers,* 154 Tenn., 638.

It was insisted that the assessments against the "acreage property" exceeded one-half of its taxable value, and the Board very promptly made the necessary reduction.

The claim of the Railway Company that its right of way was not liable for assessment was overruled.

All of these matters were set out very fully in the minutes of the Board, including the final amounts of the assessments. The Board treated the original ordinance as constituting the assessment, which seems to have been the legislative intent, and literally followed the direction of the statute wherein it is provided that "said legislative body shall hear and consider said assessment and objections thereto, and, after so doing, shall confirm, modify, or set aside said assessments as shall be deemed right and proper." There was no provision for an assessment up to this time, other than the one contained in the original ordinance.

In *Arnold* v. *Knoxville,* 115 Tenn., 225, this court referred to the front foot assessment rule as follows:

"It is predicated on the assumption that, as a rule, property along the line of a street improvement will be equally benefited; that, as a rule, property fronting upon a street, foot by foot, will be of equal value, and should therefore be equally assessed."

This rule applies to the "acreage property," and the assessments thereon, as modified by the Board, is cor-

rect. When the act in question was passed, and the proceedings herein were had before the Board of Commissioners, the case of *City of Alcoa* v. *L. & N. R. Co.*, 152 Tenn., 202, holding a railroad right of way, used exclusively for the passage of trains, not liable for such assessments, had not been decided. The predicate of that decision was that no benefit was conferred.

Where the right of way is benefited a different rule applies. We hold that, under the facts of this case, the right of way, where it crosses Rathburn Street, was benefited.

In *Pittsburgh, C. C. & St. L. R. Co.* v. *Hays* (1896), 17 Ind. App., 261, 44 N. E., 375, the court said:

"The court knows judicially that the right of way of railroad companies is frequently used for other purposes than that of simply operating their trains thereon. The right of way is frequently used for depot purposes, for track yards, and for purposes of loading and unloading freight and for storing cars and materials. When so used, a public highway affords the company ready means of ingress thereto and egress therefrom for the transportation of its business, and is a direct benefit to that portion abutting thereon. This court cannot say as a matter of law that the highway improvement was not a benefit to the abutting right of way."

We are of the opinion, however, that the modification of the front foot rule, as announced by the Supreme Court of Massachusetts, and approved by this court in *City of Nashville* v. *Land Co.*, 155 Tenn., 393, should be adopted, to-wit:

" 'It follows that, while full effect must be given in all ordinary cases to the legislative determination that an assessment by the front foot, where the conditions

are similar, is as nearly proportional and equal as is reasonably practicable, if it appears that an assessment made in that way will impose upon any property a liability substantially in excess of the special benefits conferred, such an assessment cannot lawfully be made.' "

▉ In such case, however, the burden is upon the Railway Company. 44 Corpus Juris, 679.

In this case the Railway Company has carried the burden and shown that the benefit to the right of way does not exceed $250.

Several other matters of minor importance are discussed in the brief which we have considered and which are without merit.

The aggregate assessments against the "acreage property" is $2222.65, which, added to the $250, makes the total assessments $2472.65.

The judgment of the Court of Appeals is reversed, and a judgment may be entered against the Railway Company for said sum, together with all costs, which we deem just in the circumstances.