**SOUTH CENTRAL BELL TELEPHONE COMPANY and Jupiter Industries Inc., d/b/a Chattanooga Gas Company, Plaintiffs-Appellees,**

v.

**CITY OF CHATTANOOGA, Tennessee, et al., Defendants-Appellants.**

Court of Appeals of Tennessee, Eastern Section.

July 20, 1978.

Certiorari Denied by Supreme Court Dec. 11, 1978.

Eugene N. Collins, City Atty., Randall L. Nelson and W. Lee Maddux, Chattanooga, for defendants-appellants.

Spears, Moore, Rebman & Williams, Chattanooga, for plaintiffs-appellees.

MATHERNE, Judge.

The plaintiffs, utility companies furnishing telephone service and natural gas to the citizens of Chattanooga, Tennessee, brought this lawsuit for a declaratory judgment on whether they were entitled to reimbursement for their expenses in relocating their property as a result of the widening and rebuilding of certain streets by the city. The city appeals the chancellor's decision that the utilities were entitled to be reimbursed by the city.

Since 1975, the City of Chattanooga has been engaged in a three-year "Community Development Program." Funds for this purpose have been obtained from the federal government, pursuant to the provisions of the Housing and Community Development Act of 1974. That act was passed by Congress for the purpose of consolidating all of the existing urban renewal grant programs into a single program. The act provides for "block grants" to local governments for use in community development. The expenditure of money received under these "block grants" is left more to the discretion of the local government than was allowed by previous laws. However, the money must be spent on projects directly related to slum, blighted or deteriorated areas.

The city has filed with the United States Department of Housing and Urban Development (HUD) three separate requests for funds covering the years 1975–76, 1976–77, 1977–78. These funds have been received and we are here dealing with work to be done under the "East Lake Neighborhood Improvement Project." The plan filed with HUD states that the funds will be used to "(i)mprove streets, storm drainage and add curbs, gutters and sidewalks in the East Lake community." No condemnation of property nor destruction or rebuilding of buildings are included in the East Lake project.

It was necessary that the plaintiffs relocate their lines, poles and pipes so that the East Lake Project could be carried out. The plaintiffs have done this with an agree-

ment that they are not to be prejudiced in their claim for reimbursement of relocation expenses from the city.

Prior to 1971, the law in Tennessee was to the effect that a city, in carrying out an urban renewal, slum clearance or redevelopment project, could require utilities using the public right-of-way to relocate their property at their expense. *Bristol Tennessee Housing Authority v. Bristol Gas Corp.* (1966) 219 Tenn. 194, 407 S.W.2d 681; *Pack v. Southern Bell Telephone & Telegraph Co.* (1965) 215 Tenn. 503, 387 S.W.2d 789. In each case the Court held that absent a valid reimbursement statute, the utilities must bear the expense.

Thereafter, the legislature enacted Chapter 171, Public Acts 1971, codified as T.C.A. § 13–828 through 13–831. Legislative findings and declarations pertaining to the enactment of the statute are stated in section 13–828. Section 13–830 specifically provides for reimbursement to utilities for relocation expenses, as follows:

> Reimbursement of cost of moving utility facilities.—Whenever a municipality, housing authority, or other public body of this state determines that the relocation of public service facilities of a utility within a redevelopment or urban renewal project area is necessary to the carrying out of a redevelopment or urban renewal plan pursuant to the provisions of the housing authority law, the municipality, housing authority, or other public body shall reimburse the utility for the cost of relocation of such facilities. [Acts 1971, ch. 191, § 3.]

The city argues that the foregoing statutes are not applicable because the East Lake Project is not the "carrying out of a redevelopment or urban renewal plan pursuant to the provisions of the housing authority law. . . ." This argument is primarily based upon: (1) the East Lake Project is not a redevelopment or urban renewal plan, but it is merely the widening of streets and the installation of curbs, drainage, and sidewalk facilities which may be and is being done by the city under the authority of its charter and T.C.A. §§ 6–1601 through 6–1632, the Municipal Recovery and Post War Aid Act of 1945, and (2) the East Lake Project is not being carried out pursuant to the housing authority law because the project was not assigned to the Chattanooga Housing Authority, but it was assigned to and is being carried out by the city's street department.

The record establishes that the city had the choice of assigning the various projects to the housing authority or carrying out the projects itself. The city admits that had it assigned the East Lake Project to the housing authority, Section 13–830 would have been applicable.

▪ The city relies upon the rule that if there are two ways of attaining an authorized municipal end and both ways are proper, the governing body has a choice as to which of the two means it will select. *City of Rockwood v. Rodgers* (1926) 154 Tenn. 638, 290 S.W. 381; *Knoxville Ice & Cold Storage Company v. City of Knoxville* (1925) 153 Tenn. 536, 284 S.W. 866; *Frazier v. City of Chattanooga* (1928) 156 Tenn. 346, 1 S.W.2d 786; McQuillen's, The Law of Municipal Corporations, § 10.28 (3rd Ed. 1966); 56 Am.Jur.2d, Municipal Corporation, § 152.

▪ The foregoing rule is sound law but we must here consider the legislative findings and declarations made in T.C.A. § 13–828 and determine the applicability of T.C.A. § 13–830 in the light of those statements and the facts of the present lawsuit.

The record establishes that the East Lake project is by far a more extensive undertaking than normal city activity in this respect. The director of community development for the city testified that the project is not merely a street job, but is a part of an overall job to upgrade the neighborhood; he stated that "East Lake is an area that is blighted and deteriorated," and that the purpose of the project was "to reverse the deteriorating trend and to upgrade the neighborhood." The city engineer stated that the project is not a maintenance job but it is a "major construction project out there to reverse the deteriorating trend

that is taking place and to upgrade the whole neighborhood." The mayor of the city said that the East Lake is an area "that has become blighted, it's deteriorating or it's deteriorated, it needs to be improved, rehabilitated, redeveloped, that's what the application [to HUD] said, and it was on that basis that HUD granted the money." He further testified that "insofar as the streets, curbs and sidewalks are concerned, the East Lake Neighborhood Improvement Project is a redevelopment type project."

Giving to T.C.A. § 13–830 the liberal interpretation required by the terms of section 13–828, we hold that the East Lake project was a redevelopment project as contemplated by T.C.A. § 13–830. We also hold that T.C.A. § 13–830 is not limited to those redevelopment projects which are assigned to and carried out by a housing authority. The East Lake project, being a redevelopment project of a blighted and deteriorated area, is being carried out by the city pursuant to the Housing Authorities Law, T.C.A. §§ 13–801 to 13–833, as contemplated by T.C.A. § 13–830. Money was obtained from the federal government for this purpose and under these conditions. The city could have carried out the improvements by means other than under federal block grants. The city, however, chose to operate under those laws, and it will not be permitted to circumvent the expressed public policy announced by T.C.A. §§ 13–828–830 by claiming it is carrying out the project under authority other than pursuant to the housing authorities law.

■ The city argues that the plaintiffs are excepted from T.C.A. § 13–830 by virtue of T.C.A. § 13–831 which provides, as follows:

> Sections 13–828—13–831 shall not apply to any taking or damaging of property for which the utility is entitled compensation pursuant to the constitution of Tennessee or the United States or *pursuant to any binding agreement inuring to the utility's benefit.* (Emphasis added)

It is claimed that the plaintiffs by their franchises from the city agreed to pay all relocation expenses. The city argues that

under the emphasized portion of the statute these franchises are binding contracts whereby the benefits of furnishing their respective services to the citizens of the city inured to the benefit of the utilities. This argument is foreclosed by the recent decision of the Middle Section of this Court in *Metropolitan Dev., Etc. v. South Cent. Bell* (Tenn.Ct.App.1978) 562 S.W.2d 438.

All assignments of error are overruled and the decree of the chancellor is affirmed. The cost in this Court is adjudged against the City of Chattanooga for which execution may issue, if necessary.

PARROTT and GODDARD, JJ., concur.